28 A.3d 1284

COMMONWEALTH of Pennsylvania, Appellant

v.

Steven CLARK, Appellee.

Supreme Court of Pennsylvania.

Argued March 8, 2011.

Decided Oct. 18, 2011.

Hugh J. Burns, Jr., Philadelphia, Andrea Nicole Johnson, Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

David B. Mischak, McMonagle Perri, McHugh & Mischak, P.C., Philadelphia, Carson Morris, for Steven Clark.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice McCAFFERY.

In this discretionary appeal, we review the lower courts' application of the totality-of-the-circumstances test for the existence of probable cause necessary to issue a search warrant as set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by this Court in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). Specifically, we query whether the lower courts properly applied the test in determining that a search warrant application was infirm because the affidavit of probable cause failed to expound, expressly, upon the veracity, reliability, and basis of knowledge of a confidential informant ("CI"). Because the totality of the circumstances underlying the application here included a factual recitation describing a successful controlled buy of narcotics that corroborated the affiant's averment that the CI was reliable, and because that recitation demonstrated a fair probability that narcotics would be found in the location for which the warrant was sought, we determine that the warrant was supported by probable cause. Accordingly, we reverse.

The affiant in this matter was Philadelphia Police Officer James Kidd, a fourteen-year narcotics bureau veteran who had been involved in over 3000 narcotics arrests by the time of the instant investigation. The affidavit of probable cause stated that on September 8, 2004, a "reliable confidential informant" had informed Officer Kidd that a white male, approximately 6'–6'2″ in height, weighing approximately 170–

195 lbs., known as "Steve," packages and distributes cocaine from 4242 Salmon Street in Philadelphia, and makes deliveries of cocaine in a white Pontiac Grand Am with a black roof, Pennsylvania license number FRG–5450. The affidavit further stated that the police conducted a controlled drug buy on September 9, 2004, as follows: The police observed a white male matching the description of "Steve" depart 4242 Salmon Street, directly enter a white Pontiac Grand Am with a black roof and license number FRG–5450, and drive to the site of a pre-arranged controlled buy. The police observed as the CI purchased cocaine in two green plastic baggies from the white male with $40 pre-recorded buy money. After the transaction, the police followed the white male back to 4242 Salmon Street, where they saw him exit the Pontiac and directly enter the residence. The police verified that the Pontiac was registered to "Steve Clark" with an address of 4242 Salmon Street.

Based on the above recitation, a Municipal Court Judge issued a search warrant for 4242 Salmon Street and the police executed a search of the residence on September 10, 2004. The police seized $1775 in United States currency, cocaine, cocaine "cutting" agents, packaging paraphernalia, a loaded .25 caliber handgun, and mail addressed to "Steve Clark." They arrested Appellee, Steven Clark, who subsequently filed a motion to suppress the evidence seized from the residence.

The trial court granted the suppression motion. It acknowledged that the affidavit stated that the CI was "reliable," but was concerned that there was no information as to how the reliability of the CI was established. The court opined, "[W]e are left to guess what circumstances exist which render the informant credible and his information reliable." Trial Court Opinion, dated 10/5/06, at 4. The court also questioned the basis of the CI's knowledge because the affidavit did not state that the CI had been in the residence before, or some similar facts upon which a reviewing authority could conclude that drugs would likely be found in the residence. It determined, "In the absence of information explaining how the informant knew that cocaine was being packaged and distributed inside defendant's residence[,] there is insufficient probable cause to

issue the warrant for a search of defendant's residence." *Id.* at 5.

The Commonwealth filed an interlocutory appeal certifying that suppression substantially handicapped the prosecution, and the Superior Court affirmed in a non-precedential, memorandum opinion. It concluded, as the trial court did, that the application was infirm because the affiant did not expressly state how he knew that the CI was reliable, or how the CI knew that there were drugs in the residence. Moreover, both the trial court and Superior Court held that, in order to be valid, any probable cause affidavit based on confidential information must contain, at a minimum, the "customary" recitation that the informant has provided information in the past that has resulted in arrests or convictions. Memorandum Opinion, 10/29/08, at 11. Additionally, the Superior Court concluded that there was nothing to connect the on-the-street drug transaction to Appellee's residence "other than the fact that [Appellee] left his house prior to the drug transaction, and returned there afterwards[.]" *Id.* at 12.

This Court granted the Commonwealth's petition for allowance of appeal to review the following issue:

Where the police conduct a successful controlled drug buy based on information supplied by a confidential informant, and recount the information and the conduct of the controlled buy in an affidavit of probable cause to obtain a search warrant, is probable cause lacking because the affidavit does not allege the *basis* of the confidential informant's knowledge and does not contain the "customary" phrase that the informant "has provided information that in the past has resulted in arrests or convictions?"

*Commonwealth v. Clark,* 606 Pa. 212, 996 A.2d 481 (2010).

Prior to 1983, in order to establish probable cause for the issuance of a search warrant based on information received from a confidential informant, an affidavit of probable cause had to satisfy a two-part test. The test required the affiant to set forth: 1) the basis of the informant's knowledge; and 2) facts sufficient to establish the informant's veracity or reliabil-

ity. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).[1]  In 1983, the U.S. Supreme Court abandoned this "two-part" test and adopted a "totality-of-the-circumstances" test. *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Court held that the *Aguilar–Spinelli* factors were no longer rigid, independent requirements that had to be satisfied, but instead, were merely relevant factors among the totality of the circumstances necessary to show probable cause.[2]  *Id.*

1. In *Aguilar v. Texas,* 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the entirety of the probable cause affidavit read as follows: "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law." The High Court determined that the affidavit did not establish probable cause to support the issuance of a search warrant because it included no description of the "underlying circumstances from which the informant concluded that the narcotics were where [the informant] claimed they were," or any recitation of the underlying circumstances that might show that the informant was "credible" or that his or her information was "reliable." *Id.* at 114, 84 S.Ct. 1509. In *dicta,* the Court stated that "in applying for the warrant, the police did not mention any surveillance[,]" and that "[i]f the fact and results of such a surveillance had been appropriately presented to the magistrate, this would, of course, present an entirely different case." *Id.* at 109 n. 1, 84 S.Ct. 1509.

   In *Spinelli,* the affiant, an FBI agent, averred that law enforcement officers had observed the defendant travel to and from a particular apartment that contained two telephones, neither of which were listed in the defendant's name, and that the defendant was known to the FBI as a bookmaker. *Spinelli v. United States,* 393 U.S. 410, 413–414, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The affidavit additionally averred that a reliable confidential informant had told the FBI that the defendant was conducting a bookmaking and gambling operation out of the apartment with the use of the phones therein. *Id.* The High Court determined that this information did not satisfy the *Aguilar* two-prong test, and lacked "sufficient detail" to be deemed "self-verifying." *Id.* at 416, 89 S.Ct. 584.

2. In *Gates,* an anonymous tipster informed police that Mr. and Mrs. Gates would travel separately to Florida in the near future, and that Mr. Gates would return alone with a trunk-load of narcotics in his vehicle. *Illinois v. Gates,* 462 U.S. 213, 225–228, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The police observed Mr. and Mrs. Gates travel separately to Florida and then begin the return trip to Illinois together by car. *Id.* The police set forth these facts in an affidavit of probable cause,

The High Court noted that the prongs of the former two-part test had been intended as "guides to a magistrate's determination of probable cause" that required no "elaborate exegeses of an informant's tip." *Id.* at 231 n. 6, 103 S.Ct. 2317. The Court emphasized that probable cause is a fluid concept that turns on the assessment of probabilities in factual contexts that are "not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. 2317. The Court explained that a totality-of-the-circumstances analysis permits a balanced assessment of the relative weights of all the various indicia of reliability and unreliability attending an informant's tip. *Id.* at 234–235, 103 S.Ct. 2317. Moreover, the Court criticized the former two-part test as having "encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot be sensibly divorced from the other facts presented to the magistrate." *Id.*

This Court adopted *Gates* as the applicable law under the Pennsylvania Constitution in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). We noted that "in *Gates*, the United States Supreme Court decided that its prior holdings creating 'tests' for determining whether or not probable cause existed ran contrary to the notion of probable cause as based on 'the

obtained a search warrant, and upon the return of Mr. and Mrs. Gates to Illinois, searched the vehicle and uncovered 350 pounds of marijuana in the trunk. *Id.* The Illinois Supreme Court, employing the *Aguilar–Spinelli* paradigm, ruled that the affidavit failed to show the "reliability" or "basis of knowledge" of the informant, that the affidavit was, therefore, infirm, and that probable cause for the search had not been established. *Id.*

In discarding the two-pronged *Aguilar–Spinelli* test in favor of a totality-of-the-circumstances approach, the High Court explained that decisions applying the totality of the circumstances "have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Gates, supra* at 241, 103 S.Ct. 2317. The Court went on to explain that although the informant in *Gates* had been an anonymous tipster, because the police corroborated major portions of the informant's predictions regarding the Gates's travel plans, the magistrate could reasonably conclude that the informant "also had access to reliable information of the Gates'[s] alleged illegal activities." *Id.* at 245, 103 S.Ct. 2317. Accordingly, the High Court determined that probable cause existed under the totality of the circumstances, and reversed.

factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.* at 925 (quoting *Gates, supra* at 231, 103 S.Ct. 2317). We stated that a CI's veracity and basis of knowledge are but factors among the totality of the circumstances, as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given **all the circumstances** set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed."

*Id.* at 925 (quoting *Gates, supra* at 238–39, 103 S.Ct. 2317) (emphasis added).

This Court subsequently held that a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. *Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 90 (1999). Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity. *Id.* The corroboration by police of significant details disclosed by the informant in the affidavit of probable cause meets the *Gates* threshold. *Commonwealth v. Sanchez,* 589 Pa. 43, 907 A.2d 477, 488 (2006) (*quoting United States v. Tuttle,* 200 F.3d 892, 894 (6th Cir.2000)) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information.") This Court has recently expressed the standard broadly: "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. Probable cause exists where the facts and circumstances within the affiant's knowledge and of

which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655 (2010) (citations omitted).

The trial court and the Superior Court in the present matter reasoned that even under the totality-of-the-circumstances, the affidavit of probable cause failed to show the "reliability" and "the basis of knowledge" of the CI. The lower courts reasoned that the CI's "reliability" had not been shown because the affidavit did not contain a specific incantation that the CI had in the past provided information that had led to arrests. Additionally, the lower courts here determined that the circumstances failed to support a reasonable probability that drugs would be found inside the residence because the affidavit did not contain a statement regarding the CI's basis of knowledge on that point. The lower courts' reasoning in both respects was flawed.

We first note that, in the wake of *Gates*, the Supreme Judicial Court of Massachusetts had "apparently viewed *Gates* as merely adding a new wrinkle to th[e] two-pronged test: where an informant's veracity and/or basis of knowledge are not sufficiently clear, substantial corroboration of the tip may save an otherwise invalid warrant." *Massachusetts v. Upton*, 466 U.S. 727, 730, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984).[3] The High Court reflected upon that apparent view as follows:

We think that the Supreme Judicial Court of Massachusetts misunderstood our decision in *Gates*. We did not merely refine or qualify the "two-pronged test." We **rejected it as hypertechnical[.]** . . . .

This, we think, is the error of the Massachusetts court in this case. The court did not consider [the] affidavit in its entirety, giving significance to each relevant piece of information and balancing the relative weights of all the various indicia of reliability (and unreliability) attending the tip.

3. In *Upton*, the state court determined that there had been insufficient police corroboration of an informant's tip, and thus, that the "reliability" and "basis of knowledge" aspects of the test for probable cause had not been met.

Instead, the court insisted on judging bits and pieces of information in isolation against the artificial standards provided by the two-pronged test.

*Id.* at 732, 104 S.Ct. 2085 (emphasis added).

Here, similarly, the trial court and Superior Court narrowly trained their focus on the fact that although the affiant had averred that the CI was "reliable," the affidavit contained no express statement quantifying the CI's "reliability" or "basis of knowledge." Both lower courts failed to look at the information as a whole, but examined and considered individual factors in a mechanical fashion, effectively nullifying the mandate to assess the totality of the circumstances. The totality of the circumstances here included the fact that the police corroborated significant details of the informant's tip by conducting and observing, the day before they applied for the search warrant, a controlled buy of narcotics that dovetailed precisely with the information the CI had provided. Indeed, the **only** portion of the CI's information that the police had **not** verified was where the cocaine was stashed. Although the observed facts pointed to 4242 Salmon Street as the stash house, the lower courts here erroneously determined that probable cause to search that residence was lacking, in part, because the CI had not stated that he had previously been inside that residence.

In *Commonwealth v. Davis,* 407 Pa.Super. 415, 595 A.2d 1216 (1991), the Superior Court reviewed the trial court's grant of suppression in a case in which a confidential informant had informed police that an individual named Kevin Davis was dealing narcotics from 408 Pancoast Place in the area of the William Penn Project in Delaware County, Pennsylvania. The informant had not personally observed the interior of the subject address, nor had Davis told the informant that there were drugs inside the residence. Instead, the informant had simply observed Davis dealing cocaine in the street and then return to the residence afterward. The probable cause affidavit that supported the search warrant application stated, in relevant part, as follows:

Within the past 48 hrs. the informant stated that he/she was present in the area of the Wm. Penn Project and did observe the subject Kevin Davis make approx. 3 sales to individuals, who either approached the subject (Davis) or he approached them. The informant advised the affiant that he/she observed the exchange between (Davis) and the customer. The informant also within the past 48 hrs. also observed the subject going to and coming from 408 Pancoast Pl. The informant also stated that the subject was suppose[d] to have gotten a couple of ounces of [cocaine] in just recently.

*Id.* at 1218.

A search warrant for the address was issued, based on the above information, and the police seized narcotics, paraphernalia, and cash. Following a hearing, the trial court suppressed the evidence because "the affidavit did not contain sufficient facts to believe that drugs would be found in defendant's residence[.]" *Id.* at 1219. The Commonwealth filed an interlocutory appeal, and the Superior Court reversed.

The Superior Court began its analysis of the issue regarding the CI's basis of knowledge by citation to *Gray, supra,* and its progeny. The panel specifically emphasized that the task of a magistrate is to make a practical, common sense determination whether, given all the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Davis, supra* at 1219 (emphasis omitted).[4] The Superior Court properly explained that the issue presented a close question, but that, ultimately, the information provided by the informant established probable cause for the following reasons:

4. There was no issue regarding the "reliability" or "veracity" of the confidential informant in *Davis. See Commonwealth v. Davis,* 407 Pa.Super. 415, 595 A.2d 1216, 1218 (1991) (stating that "the affiant set forth the profile of the confidential informant as to reliability and veracity"). The inquiry on appeal centered on whether the search warrant application established probable cause that the evidence sought would be found in the defendant's residence, based upon the confidential information contained in the affidavit.

*First,* Davis was seen leaving and returning to the house, a fact supporting the inference that he lived there. *Second,* within 48 hours of the issuance of the warrant, the confidential informant witnessed Davis transact the sale of cocaine on three occasions. This fact was direct evidence that Davis was trafficking in cocaine. *Third,* reading the affidavit in a common sense fashion, devoid of hyper-technicality and not in an isolated fashion as to the allegations contained therein, the confidential informant had "observed ... Davis ... on several occasions in the past selling coc[ai]ne and ... entering the residence of 408 Pancoast Pl. after he had made some sales[.]" In fact, within the 48–hour period preceding the issuance of the search warrant, the confidential informant witnessed Davis make three drug sales in the William Penn Project, and, within the same time span, Davis was "observed ... going to and coming from 408 Pancoast Pl." *Fourth,* and lastly, the confidential informant was told by Davis that he had "just recently" obtained "a couple of ounces of cocaine". This also occurred within 48 hours prior to obtaining the warrant to search the defendant's home.

*Id.* at 1221 (emphases in original).

Here, the trial court and Superior Court discounted the common sense import of the fact that after the controlled buy was arranged, the police observed Appellee leave his residence in his vehicle, as precisely described by the CI, drive to a location, conduct the transaction, and immediately return to his residence. This fact certainly connected the illegal transaction to Appellee's residence, in a common sense, non-technical way, and permitted the issuing authority to conclude that drugs would likely be found in the residence. Although the circumstances of the observed transaction also potentially pointed to Appellee's vehicle as a storage location for the drugs, "the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location." *Id.* at 1222. Accordingly, the Superior

Court's reasoning that perceived no connection between the transaction and the residence was flawed. Under the totality of the circumstances, which permits a balanced assessment of the relative weight of all the various indicia of reliability or unreliability of an informant's tip, there was a sufficient connection between the residence and the transaction to corroborate the CI's information that drugs were stored in the residence, and to support a determination of probable cause to search the residence.

Similarly, a proper totality-of-the-circumstances approach, which turns on the assessments of probabilities not neatly reduced to legal rules, supports a determination that the CI in this matter was "reliable," even though the affidavit did not state that the CI had previously provided information that led to arrests or convictions. In reaching the contrary determination here, both the trial court and the Superior Court relied on language in *Commonwealth v. Dukeman*, 917 A.2d 338, 342 (Pa.Super.2007), as follows:

> When information essential to a finding of probable cause is garnered from the use of confidential informants, the issuing authority determines the reliability of the informant's information from the facts supplied by the police official. The determination of reliability does not hinge on disclosed records regarding the track record of the informant. Furthermore, the affidavit need not contain the names, dates, or other information concerning prior arrests or convictions. The affidavit must, however, at the very least, contain an averment stating the "customary" phrase that the informant has provided information which "has in the past resulted in arrests or convictions."

*Id.* (quoting *Commonwealth v. Gindlesperger*, 706 A.2d 1216, 1225 (Pa.Super.1997) (additional quotation marks and citations omitted)).

In *Dukeman*, two informants provided confidential information, but one of the informants "had not provided information in the past that implicated anyone." *Id.* at 342. A search warrant issued based on the confidential information provided by the informants, drugs were seized in the execution of the

warrant, and the defendant filed a motion to suppress the evidence. The trial court granted the motion, determining that the affidavit of probable cause failed to establish the "reliability" of the informant who had not provided information in the past. The Superior Court reversed, determining that the affidavit of probable cause established the "reliability" of the informant who had not provided information in the past, because the information the informant provided in the present matter had been corroborated. *Id.*

Whatever the wisdom of the lower courts' reading of *Dukeman*, it is clear that under the totality-of-the-circumstances approach, there is no talismanic recitation of a particular phrase with respect to "reliability" or "basis of knowledge" that will either be required or will suffice to conclusively establish, or conclusively disaffirm, the existence of probable cause. With respect to the case *sub judice*, probable cause to support the search warrant existed, even though the affidavit contained no explicit recitation whether the CI had previously supplied information leading to arrests, or whether the CI had previously been inside the subject residence, or whether the Appellee had told the CI there were drugs in the residence. The probable cause necessary to support the search warrant existed because the information provided by the CI, namely that Appellee was packaging and distributing cocaine out of his residence, was corroborated by independent police investigation. The police observed Appellee depart his residence, go directly to the site of a pre-arranged controlled buy, exchange cocaine for money, and return directly to his residence. A common sense, non-technical reading of these facts properly established a fair probability that contraband or evidence of a crime would be found in the residence. Accordingly, we reverse the order granting suppression and remand to the trial court for further proceedings.

Justices SAYLOR, EAKIN and BAER join the opinion.

Chief Justice CASTILLE files a dissenting opinion in which Justices TODD and ORIE MELVIN join.

Chief Justice CASTILLE, dissenting.

I respectfully dissent, and I am in favor of dismissing this appeal as having been improvidently granted. I recognize that there are cases where error correction by this Court serves a salutary supervisory purpose, cases where even though the decision below was unpublished, the jurisprudential error or misapplication of the law is serious enough to warrant this Court's involvement. However, I see very little point in this Court's taking up fact-bound cases such as this, involving settled law applied in an unpublished memorandum decision below, and conducting a second round of error review. The Superior Court's approach here was within the realm of reasonable application of the settled precedent and I would leave that court to its error-reviewing task. The tendency, when this Court conducts mere error review, is to exaggerate the perceived mistake below and to make it appear more than it is. Here, it is not even as if the panel flatly and erroneously ignored or misapplied the governing standard. More importantly, there is no suggestion of a broader pattern of the Superior Court's repeated misapprehension or misinterpretation of settled law in this area. Four respected, competent judges below reviewed this issue and all four determined that the warrant was infirm, and that should be good enough, even though other judges might have weighed the same evidence differently. Absent some broader issue of statewide importance, the existing review is sufficient. Hence, I respectfully dissent.

Justices TODD and ORIE MELVIN join the opinion.