J-S15037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARELL LEE HOLMES | |
| Appellant | No. 964 MDA 2014 |

Appeal from the Judgment of Sentence May 9, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006826-2013

BEFORE:  LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED MARCH 09, 2015**

Appellant Darell Lee Holmes appeals from the judgment of sentence entered in the York County Court of Common Pleas.  We affirm.

On September 4, 2013, police officers arrested Holmes.  He was charged with two counts of delivery of cocaine[1] and one count of possession with intent to deliver ("PWID") cocaine.[2]  Following Holmes's arrest, the police officers submitted an application for a search warrant for 139 Silver Spur Dr., Apt. 1, York, PA ("the residence"), which the magisterial district judge approved.  Police officers then searched the residence, finding evidence of criminal activity, including cocaine and $5,000.00 in cash.

_____

[1] 35 Pa.C.S. § 780-113(a)(30).

[2] 35 Pa.C.S. § 780-113(a)(30).

On November 18, 2013, Holmes filed an omnibus pretrial motion seeking suppression of evidence obtained following his arrest and suppression of evidence obtained during the search of his residence. On December 19, 2013, the trial court held a hearing. At the hearing, the parties agreed that the affidavit of probable cause attached to the application for a search warrant accurately set forth the relevant facts. N.T., 12/19/2013, at 2, 3-4, 6. The affidavit provides:

> At the end of August, 2013 I was in contact with a confidential informant (CI) that could purchase cocaine from an unwitting drug dealer in the area of Market St. and Frysville Rd. in Hellam, Pa 17406. Under my direction, the CI arranged to purchase an amount of cocaine from the unwitting drug dealer in that area. The CI and his/her vehicle were searched for contraband with negative results. The police followed the CI to the arranged meeting location. Police viewed the unwitting drug dealer meet with the CI. The unwitting drug dealer told the CI that his main dealer was bringing the cocaine to the meeting location and would be there shortly. The unwitting drug dealer said that his main dealer lives nearby near the McDonalds. After a few minutes, a dark purple/blue Acura SUV bearing PA registration JHP1948 arrived at the meeting location. A black male was driving the vehicle. The CI provided the unwitting drug dealer with official funds that were previously recorded. The unwitting drug dealer walked over to the black male and[,] after a short time, walked back to the CI. The unwitting drug dealer gave the CI the amount of cocaine. The CI exited the area. The cocaine field tested positive.
>
> The vehicle the black male was driving is registered to Natasha Holmes at [the residence]. During the following week, the vehicle the black male was driving was seen parked in the area of [the residence]. On one occasion, the black male described above was seen exiting the door of [the residence].

On September 4, 2013[,] I was in contact with the same CI. Under my direction, the CI arranged to purchase an amount of cocaine from the unwitting drug dealer in the same area. The unwitting drug dealer told the CI that he would have to call his main dealer to obtain the cocaine. The CI and his/her vehicle were searched for contraband with negative results. Police followed the CI to the arranged meeting location. Police viewed the unwitting drug dealer meet with the CI. The unwitting drug dealer told the CI that his main dealer would be on location in five to ten minutes. After a few minutes, a police officer, assisting with this drug investigation, conducting surveillance, viewed the black male exit [the residence]. Police followed the black male driving the same Acura SUV as the previous deal to the arranged meeting location with the unwitting drug dealer. The black male met with the unwitting drug dealer and then left the area. Police officers followed him from the arranged meeting location, stopped and detained him.

Police officers continued surveillance and saw the unwitting drug dealer meet with the CI after the Black male left the area. After a few minutes, the unwitting drug dealer left the area. Police followed the CI to a predetermined location. The CI handed over an amount of cocaine. The CI and his/her vehicle were searched again for contraband with negative results. The cocaine purchased through the unwitting drug dealer from the black male field-tested [positive.]

Once the black male was detained, he was identified as Darell Holmes DOB 07/15/1973. Holmes was read his Miranda Rights and advised he understood his rights. Holmes said that he stays at [the residence] with his girlfriend several nights a week. He stated that he currently sells cocaine to at least two people and he has a set of scales and about $1,000.00 at the apartment.

Based on the above presented information I believe that sufficient probable cause existed to establish the fact that Darell Holmes is involved in cocaine distribution in York County and is utilizing the residence . . . to facilitate that criminal activity. Further, I believe that evidence of cocaine distribution, such [as] additional amounts of

cocaine, cash, scales[,] and packaging materials will be present at this residence.

Affidavit of Probable Cause, 9/4/2013. At the conclusion of the hearing, the trial court denied the motion.

The Commonwealth withdrew the two counts of delivery of cocaine. N.T., 5/9/2014, at 3. On May 9, 2014, the trial court conducted a bench trial on the remaining PWID count. The trial court found Holmes guilty and, pursuant to the parties' agreement,[3] sentenced him to six to twelve years' imprisonment. *Id.* at 18-19.

On June 4, 2014, Holmes filed a timely notice of appeal. Both Holmes and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Holmes raises the following issues on appeal:

1. Whether the trial court erred in denying [Holmes's] Omnibus Pretrial Motion where the police illegally stopped, detained, and/or searched [Holmes]?

2. Whether the trial court erred in denying [Holmes's] Omnibus Pretrial Motion where the search warrant in question lacked requisite probable cause?

Appellant's Brief at 3. Holmes's issues are meritless.

When reviewing a denial of a suppression motion, we limit our review to determining whether the record supports the factual findings and whether

_____

[3] Because Appellant wanted to appeal the denial of the motion, the parties stipulated to a bench trial. N.T., 5/9/2014, at 5. As part of this agreement, the parties agreed to a sentence of 6-12 years' imprisonment. *Id.* at 5-6.

- 4 -

the legal conclusions drawn from those facts are correct. ***Commonwealth v. Brown***, 64 A.3d 1101, 1104 (Pa.Super.2013). In addition, because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the defense evidence "as remains uncontradicted when read in the context of the record as a whole." ***Id.*** We may only consider evidence presented at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1085-87 (Pa.2013). We "may reverse only if the legal conclusions drawn therefrom are in error." ***Brown***, 64 A.3d at 1104.

Whether probable cause exists to justify an arrest "is determined by considering the totality of the circumstances." ***Commonwealth v. Holton***, 906 A.2d 1246, 1249 (Pa.Super.2006) (citing ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime." ***Id.*** (quoting ***Commonwealth v. Taylor***, 850 A.2d 684, 687 (Pa.Super.2004)). Further, this Court has explained:

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. Probable cause does not involve certainties, but rather the factual and practical

considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision.

*Id.* (quoting **Commonwealth v. Dommel**, 885 A.2d 998, 1002 (Pa.Super.2005)).

Similarly, courts apply this totality of the circumstances test to determine whether probable cause supports the issuance of a search warrant. **Commonwealth v. Jones**, 988 A.2d 649, 655 (Pa.2010). The Supreme Court of Pennsylvania has stated:

Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in **Gates**, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place . . . . It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

*Id.* (quoting **Commonwealth v. Torres**, 764 A.2d 532, 537–38, 540 (Pa.2001)).

- 6 -

Further, "an informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." *Commonwealth v. Clark*, 28 A.3d 1284, 1288 (Pa.2011) (quoting *Commonwealth v. Luv*, 735 A.2d 87, 90 (1999)).

Holmes first contends the police lacked probable cause to support his warrantless arrest. Appellant's Brief at 6. Holmes maintains the police based their conclusion that Holmes possessed and delivered drugs on the unreliable statements of the "unwitting drug dealer." *Id.* He maintains the unreliable statements of the drug dealer are similar to anonymous tips and the police lacked corroborating evidence. *Id.* He claims the police did not see a hand-to-hand transaction between Holmes and the drug dealer and he could have arrived at the location for an innocent reason, such as paying back money owed to the drug dealer. Appellant's Brief at 9 (quoting N.T., 12/19/2013, 4-6).

The trial court found the police officers had probable cause to arrest Holmes because the police received information from a CI that he could buy cocaine from an "unwitting drug dealer" at a specified location, which police officers corroborated by surveillance on two occasions. Opinion, 9/15/2014, at 6. The court "felt the CI's reliability was established because the same type of transaction occurred on two different occasions." *Id.* The trial court reasoned that Holmes's claim that he could have had another reason for

arriving at the location was a trial issue, not a suppression issue. *Id.* at 7. The trial court concluded the evidence should not be suppressed. *Id.* It reasoned probable cause supported the arrest because the police officers had reason to believe Holmes had just left the scene of a drug transaction and was involved in the transaction. *Id.*

The trial court did not err when it found probable cause supported the warrantless arrest. Under the totality of the circumstances, sufficient evidence supported the probable cause determination. A CI relayed information from an "unwitting drug dealer," who said his supplier would soon arrive at the location. This statement was corroborated when, after Holmes arrived at the location and met with the drug dealer, the drug dealer provided cocaine to the CI. The information was further corroborated when, during the second controlled buy, the drug dealer again informed the CI that his supplier would be at the meeting location. The police followed Holmes to the location, where he again briefly met with the drug dealer and left the location. The drug dealer then provided drugs to the CI. Given the totality of the circumstances, a "person of reasonable caution" would believe "that an offense [had] been committed by" Holmes. *See Holton*, 906 A.2d at 1249; *Clark*, 28 A.3d at 1288 ("informant's tip may constitute probable cause where police independently corroborate the tip… ."); *Commonwealth v. Goldsborough*, 31 A.3d 299 (Pa.Super.2011) (probable cause to effectuate custodial detention existed where police received detailed information of defendant's drug activities from two reliable confidential

informants, the information received from each informant bolstered the information received from the other informant, and the police conducted surveillance).

Holmes next contends the court erred when it found probable cause existed to support the search warrant of Holmes's residence. Appellant's Brief at 17-18. He again argues the "unwitting drug dealer" was not a reliable informant and the information provided by the drug dealer, i.e., that Holmes was his supplier, lacked independent corroboration. *Id.*, at 17. He argues, because the arrest was improper, the search was improper. *Id.*

For the same reasons that it found probable cause supported Holmes's arrest, the trial court also found probable cause supported the issuance of the search warrant. Opinion, 9/15/2014, at 5-7.

As discussed above, probable cause existed to conduct the stop and arrest. Following this stop, Holmes informed police that his girlfriend resided at the residence and he often stayed there. He also stated the police would find drugs, a scale, and $1,000.00 at the residence.

Based on this evidence, the trial court did not err in finding probable cause supported the issuance of the search warrant.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/9/2015