J-A05014-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEAN BRIAN WILLIAMS | : | |
| | : | |
| Appellant | : | No. 101 WDA 2018 |

Appeal from the Judgment of Sentence December 19, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0002183-2016

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY GANTMAN, P.J.E.:            FILED FEBRUARY 04, 2019

Appellant, Dean Brian Williams, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance, possession of a controlled substance with the intent to deliver, possession of drug paraphernalia, and criminal conspiracy.[1]  We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises one issue for our review:

> DID THE [TRIAL] COURT ERR WHEN IT DENIED THE
> MOTION TO SUPPRESS AND DETERMINED THAT,
> CONSIDERING THE FOUR CORNERS OF THE SEARCH
> WARRANT, THE WARRANT WAS SUPPORTED BY PROBABLE
> CAUSE TO JUSTIFY THE SEARCH?

_____

[1] 35 P.S. § 780-113(a)(16), (30), (32); 18 Pa.C.S.A. § 903, respectively.

(Appellant's Brief at 5).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. Williams, Hope L., 941 A.2d 14, 26 (Pa.Super. 2008) (en banc) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

Id. at 27.

"[A] determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." Commonwealth v. Clark, 611 Pa. 601, ___, 28 A.3d 1284, 1288 (2011). "[A]n informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." Id. at ___, 28 A.3d at 1288. "[U]nder the totality-of-the-circumstances approach, there is no talismanic recitation of a particular phrase with respect to 'reliability' or 'basis of knowledge' that will either be required or will suffice to conclusively establish,

or conclusively disaffirm, the existence of probable cause." Id. at ___, 28 A.3d at 1292 (holding probable cause supported search warrant even though affidavit of probable cause contained no explicit recitation whether confidential informant had previously supplied information leading to arrests, or whether informant had previously been inside subject residence, or whether appellee had told informant there were drugs in residence; probable cause necessary to support search warrant existed because independent police investigation corroborated information provided by informant that appellee was packaging and distributing cocaine out of his residence; police observed appellee depart his residence, go directly to site of pre-arranged controlled buy, exchange cocaine for money, and return directly to his residence; common sense, non-technical reading of these facts properly established fair probability that contraband or evidence of crime would be found in residence).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Thomas E. Flaherty, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (See Trial Court Opinion, filed June 26, 2018, at 4-5) (finding: probable cause supported search warrant for Appellant's residence, where police were able to confirm, through ongoing surveillance of residence in question and personal observation of controlled drug buy between confidential informant and Appellant, that Appellant was selling drugs from his residence; under totality

of circumstances and current law, search warrant was valid).  Accordingly, we affirm the judgment of sentence based on the trial court's opinion.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/4/2019

Circulated 01/25/2019 02:05 PM

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,

CC NO.: 2016-02183
Superior Court No: 101 WDA 2018

v.

DEAN WILLIAMS,

Defendant.

OPINION

JUDGE THOMAS E. FLAHERTY

Copies to:

Counsel for Commonwealth/Appellee:

Office of the District Attorney
303 Courthouse
436 Grant Street
Pittsburgh, PA 15219

Counsel for Defendant/Appellant:

Victoria Vidt, Esquire
Office of the Public Defender
517 Court Place
Pittsburgh, PA 15219

FILED

2018 JUN 26 AM 11: 42

DEPT OF RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY, PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,

v.

DEAN WILLIAMS,
Defendant.

CC NO.: 2016-02183
Superior Court No: 101 WDA 2018

OPINION

FLAHERTY, J.                                                                  June 18, 2018

Dean Brian Williams ("Defendant") appeals from the Judgment of Sentence imposed by

this Court on December 19, 2017.

On January 30, 2016, Defendant was charged with the following offenses for an incident

that occurred on January 29, 2016:

- Count One: person not to possess a firearm (18 Pa.C.S.A. §6105(a)(1), a felony of the second degree)
- Count Two: possession with intent to deliver cocaine (35 P.S. §780-113(a)(30), an ungraded felony)
- Count Three: possession of a controlled substance (cocaine) (35 P.S. §780-113(a)(16), an ungraded misdemeanor)
- Count Four: possession of paraphernalia (35 P.S. §780-113(a)(32), an ungraded misdemeanor)
- Count Five: criminal conspiracy (18 Pa.C.S.A. §903, an ungraded felony)
- Count Six: driving while operating privilege is suspended or revoked (75 Pa.C.S.A. §1543(a), a summary offense)

Defendant filed a Motion to Suppress on October 4, 2017 challenging the issuance of the search

warrant and the arrest of Defendant. After a hearing thereon, this Court denied Defendant's

Motion to Suppress. On December 19, 2017, the matter proceeded to a non-jury trial after which

1

Defendant was found not guilty of counts one and six and guilty of the remaining charges. Defendant waived his right to a pre-sentence report and was sentenced to serve a total of fifteen (15) months on restrictive intermediate punishment and a concurrent three (3) year period of probation.

Defendant timely filed his Notice of Appeal on January 16, 2018. Defendant was directed to file his concise statement of matters complained of on appeal via order dated January 22, 2018. Defendant's concise statement was filed on April 13, 2018 wherein he raised the following issues:

1. The four corners of the Affidavit attached to the request for a search warrant fail to establish probable cause to search the residence, for the reasons set forth at the suppression hearing.

2. Police lacked probable cause or reasonable suspicion in their initial contact with the defendant, such that all items recovered thereafter are fruit of the poisonous tree.

Defendant's first issue on appeal is that the four corners of the Affidavit of Probable Cause that was attached to the January 28, 2016 Application for Search Warrant do not establish probable cause to search Defendant's residence. The Application for Search Warrant was entered into evidence at the suppression hearing after brief testimony from Lieutenant Mark Steele. (Supp. T. p. 20). The Affidavit of Probable Cause states as follows:

> Your Affiant has 19 years['] experience with the City of McKeesport Police Dept. and is currently assigned to the narcotics investigation unit since 2004. Your Affiant has been involved in thousands of VCSDDCA arrests stemming from undercover operations and search warrants. Also assisted other agencies such as Pa. State Attorney Generals [Office] and F.B.I. with wiretap violations. Your Affiant has been trained by the D.E.A., D.A.N.E.T., and the Pa. State in the field of narcotics.
>
> This specific investigation began on or about January 15, 2016 when your Affiant was contacted by a confidential informant who will be referred to as CI

2

throughout this affidavit for fear of retaliation and harm. This CI informed detectives that a black male known as DEAN is selling cocaine from his residence at 3414 Oakland St. in McKeesport Pa 15132. And that DEAN will inform you to come to his residence or he will walk or drive his maroon Dodge Durango SUV and meet your [sic] for the cocaine sale. CI states that DEAN sells $20 to $40 pieces of cocaine packaged in small plastic baggie[s] and has several plastic baggies on his person for sale at all times.

At this point this Det/Sgt. and Det. SUMMERS set up spot surveillance on 3414 Oakland Street in the City of McKeesport and observed the maroon Dodge Durango parked in front of 3414 Oakland St. and also a black male exiting the residence and driving the Durango. This Det/Sgt. recognized the balck male as DEAN WILLIAMS from a traffic stop conducted the early month's [sic] of 2015 in which DEAN advised this Det/Sgt. that he was residing at 3414 Oakland St. with his brother CHRIS WILLIAMS. Also during the spot surveillance detectives observed short term foot traffic from known drug users and also short vehicle traffic where DEAN would exit the apartment door at 3414 Oakland St. and approach vehicles.

This Det/Sgt. is very familiar with the male known as DEAN WILLIAMS and has [had] conversation[s] with WILLIAMS in the past year. The McKeesport police Narcotics unit investigated Williams in the past in the McKeesport area and made an arrest and conviction of WILLIAMS for possessing cocaine with the intent to deliver.

This Det/Sgt. then retrieved a photograph of WILLIAMS from JNET and showed the CI who confirmed the black male photo as WILLIAMS who is supplying cocaine from his residence.

Within the past 24 to 48 hours prior to the application of this search warrant, this McKeesport Detective met this CI who is willing to cooperate with this investigation buy [sic] conducting a controlled buy of cocaine from the male known as DEAN WILLIAMS from his address 3414 Oakland St. McKeesport, PA 15132. For this buy Detectives will handle the CI who was searched prior to the buy for contraband and money with negative results. The CI contacted the target via cellphone in which WILLIAMS advised the CI of a meet location and he will arrive shortly. The CI was given official funds for the purchase and driven to the meet location in an unmarked police vehicle and released and advised where to stand and not to talk to anyone during this controlled buy. The CI was in detectives['] eyesight the entire time and did exactly what was instructed by detectives. Det. SUMMERS conducted spot surveillance on 3414 Oakland St. and after the phone call was made by the CI observed WILLIAMS exit the front door of 3414 Oakland St and go directly to the CI meet location and observed by detectives was a hand to hand transaction between WILLIAMS and the CI. WILLIAMS then immediately left and was followed by Det. SUMMERS directly back to 3414 Oakland St. McKeesport and close the door. The CI was then

3

picked up and gave this Det/Sgt. a quantity of cocaine which was purchased from WILLIAMS. The CI was then searched a second time for contraband and money with negative results. The cocaine was field tested by Det. SUMMERS using narco pouch tester with positive results.

(Affidavit of Probable Cause, pp. 1-2). The Pennsylvania Superior Court, in *Commonwealth v. Huntington*, 924 A.2d 1252 (Pa. Super. 2007), outlined the standard for issuance of a search warrant as follows: "[t]he task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Huntington*, 924 A.2d 1252, 1255 (Pa. Super. 2007) (citations omitted). Further, the *Huntington* Court stated, "the duty of the reviewing court is simply to verify that the issuing magistrate had a substantial basis for concluding that probable cause existed." *Id.* (citations omitted).

In this situation, the issuing magistrate had information that beginning on January 15, 2016, two McKeesport detectives who have experience investigating drug related offenses, observed known drug users frequenting Defendant's residence and staying for brief periods of time. The same holds true with vehicular traffic at the residence. Further, on January 28, 2016, the Detectives had the CI complete a controlled buy of crack cocaine from Defendant. During the controlled buy, the McKeesport detectives witnessed the CI arrange the transaction, Defendant leave his residence, go to the designated location, complete a hand-to-hand transaction with the CI, and then return to his residence. McKeesport detectives sought a search warrant for the person and residence of Defendant, and common sense dictates that contraband would be found on Defendant's person and in his residence. As such, there was sufficient probable cause to issue the search warrant for Defendant's person and residence.

4

Defendant's second issue on appeal is that the police lacked probable cause during their initial contact with Defendant, therefore, the items recovered are fruit of the poisonous tree. This court assumes that Defendant takes issue with Defendant's traffic stop and subsequent arrest on January 29, 2016. After the search warrant was issued for Defendant's person, Detectives Steele and Summers went to the residence to execute the search warrant. At that time, they observed Defendant enter his maroon Dodge Durango and pull away. This is the same vehicle used by Defendant when he was observed selling crack cocaine to the confidential informant. Detectives then effectuated a traffic stop in order to conduct a search of Defendant's person as authorized by the search warrant. (Supp. T. pp. 21, 26). As Detective Steele had a valid search warrant for Defendant's person, and Defendant had just left his residence, the traffic stop and search were permissible.

For the foregoing reasons, this Court's December 19, 2017 Order of Sentence should be affirmed.

BY THE COURT,

Thomas E. Flaherty, Judge
Court of Common Pleas