J-S20001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRIN WAYNE LYNCH | : | |
| | : | |
| Appellant | : | No. 91 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 9, 2020
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000429-2020

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED SEPTEMBER 15, 2021**

Appellant Darrin Wayne Lynch appeals from the judgment of sentence imposed after a jury convicted him of possession with intent to deliver (PWID), possession of a controlled substance, and possession of drug paraphernalia.[1] Appellant argues that the trial court erred in denying his motion to suppress evidence obtained based on a search warrant that lacked probable cause. We affirm.

The trial court summarized the facts underlying the issuance of the search warrant in this matter as follows:

> The affidavit of probable cause for the search warrant allege[d] that on December 28, 2019, officers from the Minersville Police Department were dispatched to a Minersville address for a report of a male who appeared to be deceased. At the scene, they found the body of Robert Davis lying on a couch and in possession of drug paraphernalia and two cell phones. An autopsy performed

---

[1] 35 P.S. § 780-113(a)(30), (a)(16), and (a)(32), respectively.

on December 31, 2019, confirmed the presence of fentanyl, cocaine, methamphetamine and benzodiazepine in Davis's system.

The affidavit further state[d] that the police obtained search warrants for the phones found in Davis's possession. The search of one of the phones produced communications between Davis and [Cheryl Davie-Lynch, a woman who shared a residence with Appellant.] On December 24, 2019 at 4:01 a.m., Davie-Lynch [told] Davis that [Appellant] had not yet returned from a trip to get cigarettes and "she" was worried he "got busted." On December 25, Davie-Lynch [told] Davis to stop by their house, and they can do "a hot rail together." Davie-Lynch then states that Davis can do a "hot rail" with "Darrin" because "she" [did] not want any more. On December 27 at 1:19 a.m., Davie-Lynch informed Davis that she was going to sell him twenty "pins" once her prescription was filled, and Davie-Lynch state[d] in the message that "she" "told Darrin" [(Appellant)] that "she" was going to sell the twenty to Davis. Patrolman Bowers interpreted a "hot rail" as referring to methamphetamine use and "pins" as the street name for Klonopin/clonazepam.

[Patrolman Bowers] further state[d] that he had known Davis for twenty years, and throughout that time Davis had provided confidential information regarding drug trafficking in and around the Borough of Minersville, and that Davis's information had always proved accurate. During the previous months, Davis had informed Patrolman Bowers that [Appellant] was trafficking methamphetamine from his residence at 438 New Castle Street in Minersville. Davis specifically informed Patrolman Bowers that [Appellant] sold the methamphetamine from his basement in a room [Appellant] called "the pit," where [Appellant] weighed and bagged the methamphetamine.

On January 2, 2020, Patrolman Bowers spoke with neighbors of 438 New Castle Street, who reported a constant flow of foot traffic in and out of that residence between the evening and early morning hours. They reported that the visitors stayed only a brief period of time and many entered the basement. Patrolman Bowers averred that he knew, based on his experience and training, that what the neighbors reported was consistent with drug trafficking.

Trial Ct. Op., 8/25/20, at 4-6.

Police conducted a search of Appellant's residence on January 3, 2020. At that time, police recovered methamphetamine, a digital scale, numerous glassine baggies, cash, and three ledger books detailing drug transactions. *See* N.T. Suppression Hr'g, 6/24/20, at 7. As a result, Appellant was arrested and charged with multiple drug-related offenses.

Appellant subsequently filed a motion to suppress in which he argued that the affidavit in support of the search warrant was insufficient to establish probable cause. *See* Mot. to Suppress, 5/18/20, at 1-2 (unpaginated). Specifically, Appellant claimed that the affidavit "failed to establish the authenticity of [the] text messages" from Davie-Lynch, or "the credibility of the informant [and] the reliability of the information he provided." Brief in Support of Pet. for *Habeas Corpus* and Mot. to Suppress, 7/23/20, at 7. Ultimately, after conducting a hearing and reviewing the briefs filed by both parties, the trial court denied Appellant's motion.

The matter proceeded to a jury trial, and on October 21, 2020, the jury convicted Appellant of all charges. On December 9, 2020, the trial court sentenced Appellant to an aggregate term of twenty-one to forty-two months' incarceration.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.[2] The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issue:

Did the suppression court err in finding that the search warrant in this matter was supported by probable cause where the affidavit of probable cause merely provided the issuing authority with unverified text messages from a deceased person's phone and statements from an informant whose reliability was not sufficiently established[?]

Appellant's Brief at 4.

The crux of Appellant's claim is that the trial court erred in denying his suppression motion because the affidavit supporting the search warrant application did not establish probable cause. *Id.* at 7. First, Appellant argues that the affiant "failed to present any factual basis whatsoever for the issuing authority to make an independent assessment that the messages found in the phone of the decedent were actually sent from Davie-Lynch." *Id.* at 13. Therefore, Appellant contends that because the text messages from Davis's phone were not properly authenticated, they could not be used to "establish any nexus between Appellant [and] Davie-Lynch" or to bolster Davis's allegations against Appellant. *Id.* at 14.

---

[2] In the Rule 1925(b) statement, Appellant also challenged the trial court's denial of his petition for writ of *habeas corpus*. However, he has abandoned that claim on appeal.

- 4 -

Second, Appellant argues that the information Davis provided to the police was "unreliable, uncorroborated, and insufficient to establish probable cause." *Id.* at 14. In support, Appellant contends that the affiant failed to state any basis for concluding that Davis was a reliable informant. *Id.* at 15-16. Further, Appellant argues that neither the text messages allegedly sent by Davie-Lynch nor the neighbors' statements to police corroborated Davis's allegation that Appellant was involved in drug trafficking. *Id.* Appellant asserts that, even if the text messages were sent by Davie-Lynch, the "sender of the [text] messages offered to use methamphetamine with [Davis,] not sell it to him." *Id.* Additionally, Appellant contends that because the affiant did not specify "the length of time between [Davis's] statements and the neighbor[s'] general observations, there was no foundation upon which the issuing authority could conclude that the neighbors corroborated [Davis's allegations against Appellant]." *Id.* at 22.

Appellant concludes that, even when viewed as a whole, "the affidavit of probable cause is a series of conclusions reached by the affiant unsupported by any factual underpinnings with which the issuing authority could have made an independent review of those conclusions." *Id.* at 23. Therefore, he argues that the trial court erred in denying his motion to suppress. *Id.* at 24.

The Commonwealth responds that "[w]hile it is true that the affiant could not establish with absolute certainty that Davie-Lynch sent the messages, the messages themselves were nonetheless properly considered in the totality of the circumstances." Commonwealth's Brief at 6. Further, the

- 5 -

Commonwealth argues that "the affiant in the instant case did verify through other means that drugs were being sold from the residence in question." *Id.* Specifically, the Commonwealth refers to Davis's tip, which police independently corroborated by interviewing neighbors, who had "observed a constant flow of foot traffic throughout the night, with individuals staying only a brief period of time at the basement of the residence." *Id.* at 8. Based on the totality of these circumstances, the Commonwealth concludes that the trial court properly denied Appellant's motion to suppress. *Id.*

Initially, we note that

our scope and standard of review of an order denying a motion to suppress are unique when we are reviewing a magistrate's decision to issue a search warrant. They differ from those cases in which we are reviewing a court's decision regarding evidence obtained without a warrant. When reviewing a magistrate's decision to issue a warrant, there are no factual findings from the trial court. Thus, we need not consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Instead, we are merely reviewing the magistrate's decision to issue the warrant. As such, our duty is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

***Commonwealth v. Manuel***, 194 A.3d 1076, 1080-81 (Pa. Super. 2018) (*en banc*) (citation and quotation marks omitted).

Further, this Court has explained:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause

- 6 -

exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in ***Illinois v. Gates***, 462 U.S. 213 (1983), and adopted in ***Commonwealth v. Gray***, 503 A.2d 921 (Pa. 1985). A magistrate is to make a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." The information offered to establish probable cause must be viewed in a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

***Id.*** at 1081 (footnote and some citations omitted, formatting altered).

"Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id.*** (citation omitted).

Where an affiant solely relies on information provided by a police informant, the existence of probable cause "depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." ***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011) (citation omitted). Further, "an informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity." ***Id.*** (emphases in original).

Here, the trial court addressed Appellant's claim as follows:

The affidavit alleges that Davis had provided Patrolman Bowers information regarding drug trafficking in Minersville for twenty

years. It does not state how Davis acquired that information, but Davis's recent death with multiple drugs in his system, as reported in the affidavit, would reasonably support the conclusion that Davis was familiar with the sources of illicit drugs in Minersville because of his own use of drugs. Patrolman Bowers vouched for the reliability of the information he had received from Davis over the years, although he did not indicate Davis's information had led to any arrests or convictions.

The affidavit alleges that, during the months preceding his death, Davis had informed Patrolman Bowers that [Appellant] was trafficking methamphetamine from the basement of his residence at 438 New Castle Street. The search of Davis's phone produced a text message sent nine days before the warrant was issued and four days before Davis's death. The sender was identified only as Davie-Lynch and expressed concern that [Appellant] may have been arrested since he was not back from a run for cigarettes. The next day, the same messenger invited Davis to go to their house and use methamphetamine with [Appellant]. Two days later, the same messenger offered to sell Davis prescription drugs and stated that "Darrin" had been informed of the planned sale.

Testimony at the omnibus motion hearing revealed that [Appellant] was married to Cheryl Davie-Lynch, but that information was not included in the search warrant affidavit.[3] However, the affidavit included corroboration of Davis's information that drug trafficking was taking place at 438 New Castle Street, and the messages from Davie-Lynch referenced "Darrin." The corroboration was in the form of the observations by [Appellant's] neighbors of heavy foot traffic at the address during very late hours and involving only brief stays. With the public knowledge of today's drug culture, it would not have required Patrolman Bowers to establish his expertise in connecting the late night, high volume, short-term visits at the residence with Davis's claim of drug trafficking from that residence. The neighbors' observations of many late night visitors going to the basement level of the residence corroborated Davis's information that [Appellant] was selling methamphetamine from his basement.

_____

[3] However, the affidavit stated that Davie-Lynch was known to reside at 438 New Castle Street, the same address as Appellant. *See* Aff. of Probable Cause, 1/2/20, at 5.

- 8 -

Trial Ct. Op. at 7-8.

Based on the totality of these circumstances, we agree with the trial court that the magistrate had a substantial basis for finding probable cause. *See Manuel*, 194 A.3d at 1081. As noted by the trial court, the police did not solely rely on Davis's tip. Instead, police provided text messages from Davie-Lynch to Davis, which discussed methamphetamine use and referenced Appellant, as well as statements by Appellant's neighbors, who indicated that a high volume of people were making short visits to the basement area of Appellant's home late at night. This evidence corroborated significant details of Davis's statement and supported Davis's allegation that Appellant was trafficking drugs from the basement of his residence.[4] *See Clark*, 28 A.3d at 1288; *see also Manuel*, 194 A.3d at 1081. Therefore, because the totality of the circumstances support the magistrate's probable cause determination, the trial court properly denied Appellant's motion to suppress. Accordingly, Appellant is not entitled to relief.

---

[4] To the extent Appellant claims that police failed to formally authenticate the text messages from Davie-Lynch or verify the specific timeframe within which Appellant was trafficking drugs, he is not entitled to relief. *See Manuel*, 194 A.3d at 1081 (stating that "[p]robable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2021