J-A07014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHNATHAN JESUS ACEVEDO | : | No. 425 MDA 2019 |

Appeal from the Order Entered February 4, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004049-2018

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:          **FILED: APRIL 14, 2020**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth), appeals from the order entered on February 4, 2019, granting a motion to suppress filed by Johnathan Jesus Acevedo (Acevedo).  Upon careful review, we vacate the order and remand for additional proceedings.

The Commonwealth charged Acevedo with possession with intent to deliver (PWID) and possession of drug paraphernalia[1] when the police searched his residence, after obtaining a search warrant, and recovered two digital scales, a spoon, a bottle of Inositol,[2] a box of .375 ammunition, $2,440.00 in U.S. currency, and six clear plastic bags containing approximately 108 grams of cocaine. Relevant to the current appeal, the

---

[1]  35 P.S. §§ 780-113(a)(30) and 780-113(a)(32), respectively.

[2] Inositol is a substance used to adulterate and add volume and weight to controlled substances such as cocaine.  *See* Wikipedia.org.

search warrant application was supported with facts contained in the affidavit

of probable case, which states:

> The affiant is Police Officer Patrick Gartell of the Northern York County Regional Police Department presently assigned to the York County Drug Task Force, and [has] been sworn in as a Special York County Detective authorized to conduct drug investigations in York County, [Pennsylvania]. As such, I am empowered to conduct drug investigations in York County. Through my employment, I have opportunities, on a daily basis to interact with various persons, including informants and sources of information, who are familiar with controlled substance use and distribution use in York County, [Pennsylvania]. In the past, I have spoken with such persons regarding the manner in which controlled substances are sold, their value, how they are packaged and how controlled substances are used. Additionally, I have constant opportunities to view controlled substances, and how they are packaged, when such controlled substances are seized by law enforcement.
>
> Additionally, while working drug investigations in central Pennsylvania I have had the opportunity to interview dozens of informants and sources of information. These interviews concerned the value of controlled substances, the appearance of controlled substances, methods of sale, methods of packaging, methods of hiding, secreting and transporting controlled substances, as well as identifying persons involved in the [distribution of controlled substances].
>
> Within the past [two] months I spoke with a confidential informant (CI) who advised that they could purchase cocaine from a person they knew as "Johnny." Through information from the CI and databases available to me I identified "Johnny" as [Acevedo]. I then showed the CI a PennDot photo of Acevedo. The CI [confirmed] Acevedo was the person they knew as "Johnny," and the person they could purchase cocaine from. A check of PennDot records lists Acevedo's address as 752 Colony Drive, York City, York Co., [Pennsylvania].
>
> Within the past two months I directed the CI to make arrangements to purchase cocaine from Acevedo. Acevedo agreed to sell the CI cocaine and a pre-determined location was agreed upon. I then searched the CI and found [him/her] to be

free of drugs, money, or any other contraband.  I then provided the CI with a quantity of cash which the serial numbers were previously recorded.  The CI was kept under continual surveillance.  Officers then watched as the CI met with Acevedo at the predetermined location.  The CI then turned over a quantity of cocaine [he/she] advised was purchased from Acevedo using the official funds provided.  The CI was again searched and [found to be] free of drugs, money, or any other contraband.  After meeting with the CI[,] assisting police officers followed Acevedo to the area of his residence and observed him entering the front door of 752 Colony Drive[.]

On a second occasion, and within the past week, I directed the same CI to contact Acevedo and make arrangements to purchase cocaine from him.  The CI and Acevedo agreed upon a pre-determined location.  I then searched and found [the CI] to be free of drugs, money, or any other contraband.  I then provided the CI with a quantity of cash of which I previously recorded the serial numbers.  I then kept the CI under continual surveillance and followed him/her to the pre-determined location.  I maintained continual visual surveillance of the CI for the duration of this incident.  A short time later I watched as the CI met with Acevedo.  The CI then returned to me a[nd] turned over a quantity of cocaine.  The CI advised that [he/she] purchased the cocaine from Acevedo using the official funds provided when officers saw them meet.  I again searched the CI and found [him/her] to be free of drugs, money, or any other contraband.

After meeting with the CI, assisting police officers followed Acevedo from the pre-determined location keeping him under continual surveillance.  Acevedo did not stop or meet with anyone else after meeting with the CI.  Police [o]fficers followed Acevedo to the area of his residence and then observed Acevedo enter the front door of 752 Colony Drive[.]

On [June 12, 2018,] officers were conducting surveillance of Acevedo's residence located at 752 Colony Drive[.]  They observed Acevedo arrive and enter the residence.  A short time later[,] officers watched Acevedo exit the residence and leave the area in a red Lexus.  Officers followed Acevedo and kept him under continual surveillance.  In the area of North Sherman St. and Hudson St.[,] Acevedo was stopped and taken into custody on the prior [two] deliveries.  Once in custody Acevedo was searched.  Officers found a plastic baggie containing cocaine in his pants

pocket. Acevedo acknowledged the substance found in his pocket was cocaine.

The cocaine found on Acevedo was packaged the same way he had it packaged during the prior deliveries.

Based upon Department policy and the York County District Attorneys['] Office recommendations, which arise out of concerns for the safety and well-being of investigators, the substance seized was not field tested[.] However, based upon my training and experience, including my experience with drug investigations in the past where I have had the opportunity to seize and view cocaine, as well as the manner in which it [is] commonly packaged in York County, I believe[d] the substance to be cocaine[.] Additionally, as described above, arrangements were made in my presence by the CI to purchase a quantity of [cocaine.] The CI was provided an amount of cash which was consistent with the amount of cocaine to be purchased[.] The CI met with the supplier as described above and purchased what the CI, who is a cocaine user, believed to be cocaine[.] The amount of cocaine purchased by the CI was consistent with the amount of money provided. []Taken in their totality, I believe that all of these factors demonstrate that the substance purchased and seized was cocaine[.]

A check of Acevedo's criminal history shows he pleaded guilty to conspiracy to manufacture a controlled substance for an offense that occurred in York County on [October 11, 2016].

Through my training and experience, including the observations made during this investigation which are presented above, I believe that a cocaine vending operation is being conducted by Johnathan Acevedo inside the residence at 752 Colony Drive, within York City, York County, [Pennsylvania]. I believe that evidence of that offense, including additional amounts of cocaine; cash previously used to purchase cocaine; materials and items commonly used to package cocaine, such as plastic bags and electronic scales; records or documentation of past cocaine transactions; and property or other assets acquired through illegal drug trafficking will be present at 752 Colony Drive [w]ithin York City, York County, [Pennsylvania].

Affidavit of Probable Cause, 6/12/2018, at 2-5.

Based upon the information set forth in the affidavit of probable cause, the police applied for a search warrant to search the residence on Colony Drive. A magisterial district judge authorized the search warrant. Upon execution of the search warrant, police recovered the items described above. As mentioned in the affidavit of probable cause, in a search incident to arrest, police also recovered cocaine from Acevedo's person that was packaged similarly to the cocaine previously purchased by the CI. The Commonwealth charged Acevedo with the aforementioned crimes on July 31, 2018. On August 30, 2018, Acevedo filed an omnibus pre-trial motion seeking suppression. The trial court held a hearing on October 5, 2018 and the court held its decision in abeyance pending the filing of briefs.

On February 4, 2019, the trial court granted Acevedo suppression by order and opinion. The trial court determined that the affidavit of probable cause did not indicate that Acevedo was selling cocaine from his residence and "any connection to [Acevedo's] residence [was] too tenuous[.]" Trial Court Opinion, 2/4/2019, at 6. More specifically, the trial court offered the following rationale for granting suppression:

> The CI provided good information[3] that tipped off [police] officers
> and led to **two** [controlled narcotics transactions] that provided

_____

[3] The trial court noted it "was not truly assessing the reliability of the CI; but rather, [was] assessing any evidence supplied to the magistrate, by the officers, about the residence in question." Trial Court Opinion, 2/4/2019, at 7. "[A] determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of

- 5 -

probable cause to arrest [Acevedo] for selling cocaine. Yet, crucially, the officers did not follow [Acevedo] from his supposed residence to the [controlled drug buys]; but, rather, followed [Acevedo] to his residence **after** each of the [transactions]. Thus, the officers established that [Acevedo] twice returned to his domicile after selling drugs and nothing more. There was no useful information garnered vis-à-vis the residence as the source of drugs or a stash location when the affidavit does not indicate whether [Acevedo] left for the [controlled drug buys] from the home. As [Acevedo] was not followed from his residence to the [controlled drug buys] – despite the officers knowing the location at which [Acevedo] resided – it is impossible to infer – certainly not the degree necessary for probable cause – that [Acevedo] obtained drugs to sell from his residence. The Commonwealth cannot say from whence the drugs utilized in the [controlled drug buys] were obtained. This leads to the day of arrest – and the final opportunity, along with the rest of the totality of the evidence, for the affidavit to have provided sufficient probable cause.

The officers staked out [Acevedo's] residence. The officers saw [Acevedo] arrive at and enter his home. Shortly thereafter, the officers observed [Acevedo] leave the residence, enter a red Lexus, and depart the area of the home. Thereafter, [Acevedo's] vehicle was stopped and he was arrested for the previous [controlled drug buys]. Incident to arrest, [] cocaine was seized from his person. The Commonwealth [] infer[s] that because [Acevedo] entered his residence and left shortly thereafter and was seized with cocaine on his person that matched the packaging from the [controlled drug buys] then the residence had to be the source of the drugs and thus probable cause to search was

---

knowledge viewed in a common sense, non-technical manner. Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." *Commonwealth v. Gagliardi*, 128 A.3d 790, 795-796 (Pa. Super. 2015) (citation omitted). As discussed below, our Supreme Court previously rejected the grant of suppression based upon lack of probable cause merely "because the CI had not stated that he had previously been inside th[e] residence" where alleged narcotics were said to be sold. *Commonwealth v. Clark*, 28 A.3d 1284, 1289 (Pa. 2011). Here, police independently verified the CI's tips when they surveilled the two prior controlled drug buys.

established. [The trial court] believe[d] this [was] too attenuated and weak. On the day of the arrest, the officers had staked out the residence. If the officers had set up a third [controlled drug buy] then they might well have observed the same thing ([Acevedo] entering his residence and leaving shortly thereafter), which, in combination with an established [controlled drug buy], would have established that the home was the likely source of the drugs. Instead, the information in the affidavit merely indicates that [Acevedo] arrived at and left his home before being arrested. The presence of cocaine on [Acevedo's] person at the time of arrest would only allow the magistrate to infer that [Acevedo] had cocaine on his person and **not the source of the cocaine**. Cocaine on [Acevedo's] person was not a substantial basis from which the magistrate could conclude that the residence was the source of the cocaine. For the foregoing reasons, [the trial court granted Acevedo's] motion to suppress evidence gathered from the search of his residence[.]

*Id.* at 7-8 (emphasis in original). This timely appeal resulted.[4]

In its Rule 1925(b) statement, the Commonwealth averred that the trial court failed to consider the nexus between the money used by the CI in the two controlled drug buys and Acevedo's residence. More specifically, the Commonwealth argued that the police recorded the serial numbers from the money used in the two prior CI transactions and that they witnessed Acevedo enter his residence immediately thereafter on both occasions. As such, the Commonwealth argued there was a reasonable probability that evidence of crime would be located in Acevedo's residence. The Commonwealth also

_____

[4] The Commonwealth filed a notice of appeal on March 6, 2019. The notice of appeal contained the requisite certification, pursuant to Pa.R.A.P. 311(d), stating that the suppression order would terminate or substantially handicap the prosecution. On March 27, 2018, the Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 9, 2019, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) which relied, in part, upon its previous February 4, 2019 opinion.

argued that police seized cocaine from Acevedo's person after he was seen leaving his residence and while he was e*n route* to a third controlled drug buy. Thus, the Commonwealth averred that, in considering the totality of the circumstances, there was probable cause to issue a search warrant for Acevedo's residence and suppression was unwarranted.

In response to these arguments, the trial court concluded:

Turning to the buy-money, [the trial court did] not deny that the buy money would have been evidence of the two [controlled drug buys]; however, based upon the [criminal i]nformation [filed by the Commonwealth], [Acevedo] does not appear to have been charged with [crimes pertaining to] the [controlled drug buys]. Rather, the true target of the search appears to have been evidence of a drug-vending operation at the location in question. For all the reasons stated in [the February 4, 2019 opinion], the buy-money would be irrelevant to the crimes charged. The buy-money would have been relevant to charging [Acevedo] for the two [controlled drug buys] known to have occurred. Now, the affidavit of probable cause does state in its closing paragraphs that the officer believes that monies from previous drug-dealing will be found at the residence. The Superior Court might conclude this is enough, especially in light of such cases as **Commonwealth v. Clark**, [28 A.3d 1284, 1291 (Pa. 2011)] which calls upon courts to weigh the totality of the circumstances and to not evaluate pieces [of evidence] in isolation. [The trial court] was swayed by York County's recent experience with **Commonwealth v. Manuel**, 194 A.3d 1076, 1081 (Pa. Super. 2018). It seemingly calls upon [courts] to hold officers to a more stringent standard than what has previously sufficed in York County, Pennsylvania. Despite **Manuel**, [the trial court] has denied suppression in numerous recent cases, including: **Commonwealth v. Inkroe**, **Commonwealth v. Lawrence**, **Commonwealth v. Madera-Guilbe**, [and] **Commonwealth v. Ferguson**. In all of these cases, the officers performed independent police work that tied the residence to be searched to the defendant. [The trial court] believe[s it] did balance the totality of the circumstances in this case and, even with the addition of the buy-money, [did] not believe that the balance tips in the Commonwealth's favor. Though there was theoretically

some possibility of locating buy-money at the location in question as [Acevedo] was observed to return there, [the trial court] believe[d] it [was] too tenuous. [The trial court] readily acknowledge[d] that this [was] a close call. If the Commonwealth's assertion that a third [controlled drug buy] was, in fact, evident in the affidavit of probable cause, then [the trial court] would agree that a sufficient nexus had been established. If the [trial court] erred, [it] know[s] that the Superior Court will set it right.

Rule 1925(a) Opinion, 8/9/2019, at 4-5 (superfluous capitalization and trial court citations omitted; emphasis in original).

On appeal, the Commonwealth presents the following issue for our review:

I.     Whether [t]he [s]uppression [c]ourt erred in suppressing the fruits of the search warrant as the four corners of the search warrant contained probable cause to search [Acevedo's] residence under the totality of the circumstances[?]

Commonwealth's Brief at 4.[5]

This Court has stated:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however,

_____

[5]   The Commonwealth makes the same arguments to this Court that it presented to the trial court. We need not recite them again here.

we maintain *de novo* review over the suppression court's legal conclusions.

With regard to search warrants, we have explained the following.

> It is well-established that for a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance, and make this determination on facts described within the four corners of the supporting affidavit, and closely related in time to the date of issuance of the warrant. It is equally well established that a reviewing court [must] pay great deference to an issuing authority's determination of probable cause for the issuance of a search warrant.[6] Moreover, our Supreme Court has recognized that affidavits supporting search warrants normally are prepared by nonlawyers in the midst and haste of a criminal investigation, and, accordingly, said affidavits, should be interpreted in a common sense and realistic fashion rather than in a hypertechnical manner.

*Commonwealth v. Korn*, 139 A.3d 249, 252–253 (Pa. Super. 2016) (internal citations, ellipsis, and quotations omitted).

> Our Supreme Court has concluded:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given **all the circumstances** set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

---

[6] "Although reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, the deference afforded a magistrate judge ensures that, if a substantial basis exists to support the magistrate's probable cause finding, the trial court must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." *Gagliardi*, 128 A.3d at 795.

***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011) (emphasis in original).  "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted."  ***Id.***

In ***Clark***, our Supreme Court recounted:

The affiant in [***Clark***] was Philadelphia Police Officer James Kidd, a fourteen-year narcotics bureau veteran who had been involved in over 3000 narcotics arrests by the time of the instant investigation. The affidavit of probable cause stated that on September 8, 2004, a "reliable confidential informant" had informed Officer Kidd that a white male, approximately 6'–6'2" in height, weighing approximately 170–195 lbs., known as "Steve," packages and distributes cocaine from 4242 Salmon Street in Philadelphia, and makes deliveries of cocaine in a white Pontiac Grand Am with a black roof, Pennsylvania license number FRG-5450. The affidavit further stated that the police conducted a controlled drug buy on September 9, 2004, as follows: The police observed a white male matching the description of "Steve" depart 4242 Salmon Street, directly enter a white Pontiac Grand Am with a black roof and license number FRG–5450, and drive to the site of a pre-arranged controlled buy. The police observed as the CI purchased cocaine in two green plastic baggies from the white male with $40[.00] pre-recorded buy money. After the transaction, the police followed the white male back to 4242 Salmon Street, where they saw him exit the Pontiac and directly enter the residence. The police verified that the Pontiac was registered to "Steve Clark" with an address of 4242 Salmon Street.

Based on the above recitation, a Municipal Court Judge issued a search warrant for 4242 Salmon Street and the police executed a search of the residence on September 10, 2004.  The police seized $1775[.00] in United States currency, cocaine, cocaine "cutting" agents, packaging paraphernalia, a loaded .25 caliber handgun, and mail addressed to "Steve Clark." They arrested Appellee, Steven Clark, who subsequently filed a motion to suppress the evidence seized from the residence.

*Id.* at 1285–1286.

Ultimately, the *Clark* Court found:

The totality of the circumstances here included the fact that the police corroborated significant details of the informant's tip by conducting and observing, the day before they applied for the search warrant, a controlled buy of narcotics that dovetailed precisely with the information the CI had provided. Indeed, the only portion of the CI's information that the police had not verified was where the cocaine was stashed. Although the observed facts pointed to 4242 Salmon Street as the stash house, the lower courts here erroneously determined that probable cause to search that residence was lacking, in part, because the CI had not stated that he had previously been inside that residence.

*Id.* at 1289. The *Clark* Court concluded, "there was a sufficient connection between the residence and the transaction to corroborate the CI's information that drugs were stored in the residence, and to support a determination of probable cause to search the residence." *Id.* at 1291.

In this case, we note initially that we give great deference to the magistrate in finding probable cause to support the issuance of a search warrant. Here, the application for the search warrant, and the attached affidavit of probable cause, included a verified factual recitation of two prior controlled drug buys of cocaine from Acevedo. Thus, similar to the facts in *Clark*, the CI herein was reliable. Moreover, based upon all of the information provided, the affidavit of probable cause demonstrated a fair probability that the proceeds of crime would be found in the location for which the warrant was sought. The affidavit specifically stated that police twice witnessed Acevedo enter his residence immediately after receiving previously recorded

buy money in exchange for cocaine. These funds constituted the proceeds of criminal activity, were specifically identified in the affidavit of probable cause, and there was a fair probability that they would be found inside the residence. *See Commonwealth v. Coleman*, 830 A.2d 554, 564 (Pa. 2003) ("there was an overwhelming probability that, at the time police would actually enter the residence under authority of [a search] warrant, evidence of a crime - specifically, the marked buy money - would be found there."). In addition, the affidavit of probable cause detailed that, shortly after the controlled drug buys, police surveilled Acevedo leave his residence and when they initiated a traffic stop and arrested Acevedo, they recovered cocaine from his person packaged identically to the two prior controlled buys.[7] Hence, the officer's affidavit also demonstrated a reasonable probability that police would find cocaine, together with other identified items relating to criminal activity, in the residence. Based upon a totality of the circumstances, the affidavit of probable cause established a fair probability that controlled substances or other evidence of illicit activity would be located at Acevedo's residence. Since all of the aforementioned information was set forth in the affidavit of probable

---

[7] In his motion to suppress, Acevedo did not challenge the traffic stop or the seizure of the cocaine from his person incident to his arrest. Nor does he suggest that the cocaine was stored in his vehicle. Regardless, as our Supreme Court noted in *Clark*, "[a]lthough the circumstances of the observed transaction also potentially pointed to [Clark's] vehicle as a storage location for the drugs, the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location." *Clark*, 28 A.3d at 1291 (citation omitted).

cause, we hold that the magistrate had a substantial basis for concluding that probable cause existed. Accordingly, it was trial court error to grant suppression.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/14/2020