J-A16030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                :        PENNSYLVANIA
                                :
           v.                    :
                                :
                                :
LAMONT JOHNSON           :
                                :
           Appellant      :    No. 1838 EDA 2021

Appeal from the Judgment of Sentence Entered January 23, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0008104-2014

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:        **FILED FEBRUARY 27, 2023**

Lamont Johnson (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury convictions of possession of a controlled substance with intent to deliver (PWID) and possession of drug paraphernalia.[1] Appellant advances two arguments: (1) the trial court erred in denying his motion to suppress because the search warrant was not supported by probable cause, and in turn, his confession was not voluntary; and (2) the trial court erred in denying his request for disclosure of the confidential informant who provided information

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) & (32).

that was included in the affidavit of probable cause that accompanied the search warrant. For the reasons below, we affirm the judgment of sentence.

The relevant facts and procedural history underlying this appeal are as follows. Patrolman Timothy Garron (Officer Garron), of the City of Chester Police Department, conducted a criminal investigation, which included three controlled narcotics buys by a confidential informant (CI), and applied for an anticipatory search warrant on December 4, 2014, of Appellant's residence located at 909 West 7th Street, Chester, Pennsylvania, and his vehicle bearing a Pennsylvania license plate with the following identification, "JST-8648." Application for Search Warrant and Authorization (Search Warrant), 12/4/14, at 2, 4-5, 8.[2] A magisterial district judge issued the search warrant on December 4, 2014. Officer Garron executed the search warrant on December 5, 2014. After police officers entered the home, they found Appellant in the front bedroom on the second floor. N.T., 8/11/15, at 33. They placed him in handcuffs and gave him *Miranda*[3] warnings before they conducted a search of the home. *Id.* at 33-34. Police seized a pillowcase, which included (1) a

_____

[2] Officer Garron averred that at the time of the application, he had been a full-time police officer with the Chester Police Department for over six years. Search Warrant at 2. He stated that for the past 21 months, he was assigned to the Narcotics, Vice and Intelligence Unit, and that for the past 20 months, he was a sworn member of the Criminal Investigation Division, Drug Task Force for the Office of the District Attorney of Delaware County. *See id.*

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

clear plastic bag with five knotted plastic bags, containing 51.17 grams of cocaine; (2) another plastic bag containing 43 heat sealed orange plastic zip lock bags contained 10.19 grams of cocaine; (3) two blue plastic bags containing 1.02 grams of cocaine; and (4) one knotted clear plastic bag containing nine blue plastic zip lock bags which contained five grams of cocaine. *See* N.T., 11/30/16, at 64-66.[4]

Police Officer Mark Barag of the City of Chester Police Department assisted in the execution of the search warrant, and interviewed Appellant at police headquarters. Officer Barag provided Appellant with *Miranda* warnings prior to questioning him, and gave him a waiver form. N.T., 8/11/15, at 53, 56. Appellant reviewed the form and signed it. *Id.* at 53-59. As evidenced by the form, Appellant admitted that narcotics in the pillowcase were his, that he purchased the drugs in North Philadelphia, that it was his intention to sell the drugs and "get high," and that he took full responsibility for all recovered narcotics and drug paraphernalia. N.T., 11/30/16, at 216-18. Appellant also indicated that he was not coerced or forced to say anything during the interview. *Id.* at 218. Thereafter, Appellant was arrested and charged with numerous violations of the Controlled Substances Act, including PWID.

---

[4] Based on the packaging and weight of the cocaine seized, this amounted to between $6,000.00 to $7,000.00. *See* N.T., 11/30/16, at 239-40.

On May 20, 2015, Appellant filed an *omnibus* pretrial motion, seeking suppression of any statements or physical evidence recovered as a result of the search warrant on the basis that the officers lacked probable cause, insofar as there were purported defects in the warrant.[5] The court held a hearing on August 11, 2015, regarding the matter. On March 16, 2016, Appellant filed an amended *omnibus* pretrial motion, which concerned a motion for disclosure of information regarding the confidential informant. The court held another hearing on April 12, 2016. On June 3, 2016, the court denied both motions.

The matter proceeded to a jury trial, which began on November 29, 2016. On December 1, 2016, the jury convicted Appellant of PWID and possession of drug paraphernalia. On January 23, 2017, the court sentenced Appellant a term of 40 to 140 months' incarceration for the PWID conviction, followed by five years of probation, and a concurrent term of six months to 12 months' incarceration for the possession of drug paraphernalia offense. Appellant filed a *pro se* notice of appeal on February 27, 2017.

On April 8, 2019, this Court remanded the matter for the trial court to hold an evidentiary hearing to determine whether Appellant timely delivered his *pro se* notice of appeal to prison authorities. **See Commonwealth v. Johnson**, 779 EDA 2017 (Pa. Super. Apr. 8, 2019) (unpub. memo.). On May

---

[5] The May 2015 motion was not included in the certified record. The contents of the motion were taken from defense counsel's statements at the suppression hearing. **See** N.T., 8/11/15, at 3-4.

23, 2019, the court held a hearing, but the matter was continued until July 22, 2019, "for Appellant to bring a properly executed cash slip or other reasonably verifiable evidence of the date he deposited his *pro se* filing of his notice of appeal with the prison authorities." Trial Ct. Op., 12/16/21, at 3. At the time of the July 22nd hearing, Appellant did not produce proof of the deposit. On September 10, 2019, this Court quashed Appellant's appeal. **See Commonwealth v. Johnson**, 779 EDA 2017 (Pa. Super. Sep. 10, 2019) (unpub. memo.).

On April 8, 2020, Appellant filed a *pro se* petition for post-conviction relief pursuant to the Post-Conviction Relief Act (PCRA).[6]  Counsel was appointed, who then filed an amended PCRA petition on May 28, 2020. On August 17, 2021, the trial court entered an order that included a stipulation by both parties averring that "trial counsel provided ineffective assistance when he failed to file a timely notice of appeal when timely requested to do so by petitioner, and, as a result, [Appellant]'s direct appeal to the Pennsylvania Superior Court was quashed." Order of the Court, 8/17/21, at 1 (unpaginated).  The court stated that "[t]rial counsel had no reasonable basis for failing to file the requested notice of appeal and [Appellant] was prejudiced as a result. . . ." **Id.**  Therefore, the court ordered that his direct

---

[6] 42 Pa.C.S. §§ 9541-9546.

appeal rights be reinstated *nunc pro tunc*. *Id.* Thereafter, new counsel was appointed, who filed a notice of appeal.

Appellant raises the following issues on appeal:

1. Whether the Honorable Trial Court erred as a matter of law and abused its discretion, and denied [Appellant] rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution, in denying [Appellant]'s pre-trial motion to suppress the fruits of the search of his home and the resulting incriminating statement, as the warrant issued for the residence fails to set out probable cause to believe that contraband would be found within the residence and the subsequent incriminating statement of [Appellant] was the product of the unlawful search?

2. Whether the Honorable Trial Court erred as a matter of law and abused its discretion, and denied [Appellant] rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution, in denying [Appellant]'s pre-trial motion for disclosure of the confidential informant who provided information included in the Affidavit of Probable Cause accompanying the search warrant, where the pre-trial request for disclosure of the informant was material to his defense, was reasonable and in the interest of justice, and where the Commonwealth failed to establish that the safety of the informant would be compromised by disclosure?

Appellant's Brief at 4-5.

Appellant first complains that the trial court erred and abused its discretion by denying his motion to suppress because "the search warrant resulting in the seizure of illegal drugs, Appellant[']s arrest and subsequent confession was not based on probable cause." *See* Appellant's Brief at 19.

He asserts the warrant was not based on probable cause due to the CI's lack of reliability, stating:

According to the affidavit, Officer Garron received information from the informant that a male known as "L" was selling drugs from the residence at 909 W. 7th Street in Chester. After performing some internet-based searches, [Officer] Garron connected Appellant . . . with the residence. The information supplied by the informant, as corroborated by [Officer] Garron, so far fails to provide probable cause, as corroboration of readily obtainable facts does not provide probable cause. . . . The informant is not shown to be reliable simply because police verified Appellant's address as given by the informant. In addition, although the Affidavit states that the informant provided information that led to three arrests, information leading to arrests only does not establish reliability because there is no showing that the information previously provided, was proven to be true. The affidavit fails to include any other facts relating to the case or cases in which the informant provided information; for instance, the affidavit does not indicate the name of the persons arrested, the type of information provided by the informant or whether the case or cases got past the preliminary hearing; the affidavit does not specify the type of information given in the previous cases or whether the informant participated in the criminal activity. . . .

Appellant's Brief at 21-22 (citations omitted). Furthermore, he argues: "Nor does the fact that the informant told police he observed cocaine in the residence . . . amount to a declaration against penal interest[.]" *Id.* at 23 (citation omitted). Appellant also claims:

[T]he Affidavit does not establish a basis for the informant to state that "L" is selling drugs from the residence, nor is there a time frame as to when the informant saw the drugs inside the house or as to when the person known as "L" was actually selling illegal drugs from the house[.] The Affidavit states that the informant made states against his penal interest[, but t]he actual statements, or even the general nature of the statements, do not appear in the affidavit. The affidavit does not indicate whether those statements were made with reference to this case and cannot be said to have been incriminating for the informant. One cannot ascertain from the face of the affidavit, whether the statements were made to curry favor from law enforcement, to

minimize culpability, to retaliate against another or given for any other such self-serving reason.

*Id.* at 23-24 (citation omitted). Appellant maintains that the determination "that the drugs were purchased from within the residence, therefore, is based entirely, not on police observation of the informant's activities, but, instead on acceptance of the informant's credibility." *Id.* at 25.

Appellant also suggests that since his arrest was purportedly unlawful, his statements to police should be suppressed as well. *See* Appellant's Brief at 25. He states that the "Pennsylvania Supreme Court historically has not found a confession coming after an illegal arrest to have been freed from the taint of the illegal arrest simply because the incriminating statement was preceded by *Miranda* warnings[.]" *Id.* at 28 (citations omitted). Appellant concludes, "Because [he] was arrested without probable cause, and as a result of [his] confession having not been purged of the illegal arrest, the statements made by [him] to police should have been suppressed." *Id.*

When reviewing suppression decisions, our standard of review is limited.

We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the [defendant's] witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021) (citations & quotations marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) (citation omitted).

As Appellant's argument pertains to the validity of the search warrant, we are guided by the following:

> The Fourth Amendment to the United States Constitution commands that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend IV. Similarly, Article I, Section 8 of the Pennsylvania Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. I, § 8.
>
> A search warrant may issue only upon a demonstration of probable cause by an affiant. *See generally Commonwealth v. Gary*, 91 A.3d 102, 107 (Pa. 2014). The existence of probable cause is measured by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he [or she] has reasonably trustworthy information are sufficient in and of themselves to warrant a [person] of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Johnson*, 42 A.3d 1017, 1031 (Pa. 2012) (internal quotation marks and citation omitted). A magisterial district judge, when deciding whether to issue a search warrant, must "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit .

. . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (citation omitted). Conversely, "[a] court reviewing a search warrant determines only if a substantial basis existed for the magistrate to find probable cause." *Id.* (citation omitted). We also note that there is a strict particularity requirement in Article I, Section 8 of the Pennsylvania Constitution that "a warrant must describe the items as specifically as is reasonably possible." *Commonwealth v. Grossman*, 555 A.2d 896, 899 (Pa. 1989); *see also* Pa.R.Crim.P. 205(2) (requiring all search warrants to "identify specifically the property to be seized"); *id.* at 205(3) (requiring all search warrants to "name or describe with particularity the person or place to be searched").

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1081-82 (Pa. 2017).

Moreover, "a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." *Commonwealth v. Clark*, 28 A.3d 1284, 1288 (Pa. 2011). "[A]n informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity." *Id.* (emphasis in original). "[U]nder the totality-of-the-circumstances approach, there is no talismanic recitation of a particular phrase with respect to 'reliability' or 'basis of knowledge' that will either be required or will suffice to conclusively establish, or conclusively disaffirm, the existence of probable cause." *Id.* at 1292. *See also Commonwealth v. Luv*, 735 A.2d 87 (Pa. 1999).

- 10 -

As noted above, Officer Garron was the affiant for the search warrant and affidavit of probable cause at issue. The affidavit of probable cause stated, in relevant part:

> During the month of October [Officer Garron] spoke with a reliable [CI] regarding narcotics sales from an individual only known to [CI] as "L". During this conversation [CI] stated that he/she knows "L" resides at 909 West 7th Street, Chester, Delaware County, Pennsylvania 19013 and sells large quantities of cocaine from his residence. [CI] went on to describe "L" as a black male, approximately 5'4" to 5'7" with a medium build, dark complexion, with a beard and black low cropped hair who is approximately 40 years old. [CI] has observed "L" numerous times inside of 909 West 7th Street . . . with large amounts of cocaine as well as large sums of [United States] currency. [CI] further stated that he/she is aware that "L" has been arrested in the past for previous narcotics convictions.
>
> [CI] advised [Officer Garron] that he/she wishes to remain anonymous for fear of bodily harm/death and/or retaliation against their property should their identity become known. [Officer Garron] also wishes [CI]'s identity to remain anonymous out of concern for [CI]'s safety, and also, should his/her identity become known he/she could no longer provide law enforcement with information regarding illegal drug activity in and around Delaware County. [Officer Garron] has corroborated this information through independent police investigation and through other sources of information (Ex.: investigation/reports/records checks). [CI] has provided law enforcement with information regarding other narcotics investigations, where during or after their completion different quantities of narcotics/firearms have been seized and at least three individuals have been arrested as a result. [CI] has also made numerous statements against his/her penal interest including the fact that [CI] is/was a user/dealer of controlled substances. In conversation with [CI, Officer Garron] knows [CI] to have a thorough familiarity with the ways in which controlled substances, specifically cocaine, is used, sold and distributed, and the corresponding prices at which the various doses are sold. [Officer Garron] through training and experience know[s] this information imparted by [CI] to be accurate.

During the month of October [Officer Garron] conducted multiple searches on the address of 909 West 7th Street . . . and was able to locate the name Lamont Johnson . . . as a resident [at that address]. With this information in hand, [Officer Garron] conducted numerous searches on the name Lamont Johnson using JNET,[7] court records and the National Crime Information Center (NCIC). Records, including photos for Lamont Johnson were found, printed and presented to [CI]. [CI] stated that the photo obtained utilizing JNET by your affiant was that of "L" who he/she knows has been selling cocaine from the residence located at 909 West 7th Street[.] Further research on [Appellant] . . . revealed that he has five prior convictions for violations of Title 35 for manufacturing, delivery, or possession with intent to deliver a controlled substance.

* * *

During the month of October [Officer Garron] conducted numerous periods of hidden surveillance during various times of the day and nighttime hours on the address of 909 West 7th Street[.] During the course of these various surveillance periods [Appellant] aka "L" was observed coming and going from the front and rear door of 909 West 7th Street[.]Furthermore, [Officer Garron] observed heavy foot and vehicular traffic, often using the rear entrance to [the property]. Through training and experience [Officer Garron] knows this activity to be consistent with narcotics trafficking.

During the month of November [Officer Garron] met with [CI] for the purpose of conducting a controlled purchase of cocaine from [Appellant] from within the residence located at 909 West 7th Street[.] [CI] was searched and found to be free of any controlled substances and/or United States currency. [Officer Garron] gave [CI] a quantity of United States currency with which to make the controlled purchase. [Officer Garron] and [CI] together went to the vicinity of 909 West 7th Street[.] [CI] left [Officer Garron] and went directly inside the rear door of 909 West 7th Street . . . , by way of a carport/garage making no stops in between and meeting with no other individuals. After approximately ten minutes [CI] exited the rear door of 909 West

_____

[7] JNET standards for Pennsylvania Justice Network.

7th Street, . . . and returned directly to [Officer Garron]. Involved members of law enforcement had constant observation of [CI] prior to entering the residence as well as after the completion of the controlled buy. At no time did [CI] stop and or exchange anything with any person on the street while [e]n route to or from the residence located at 909 West 7th Street[.] Upon returning to [Officer Garron], [CI] turned over a quantity of cocaine consistent with the currency provided, while confirming that the subject [CI] purchased the illegal narcotics from was [Appellant] from within the residence located at 909 West 7th Street[.] [CI] was again searched and found to be free of money and/or a controlled substance. The cocaine purchased during the controlled buy was returned to Chester Police Headquarters where a field test was conducted and a positive reaction was received at which time the cocaine was placed into evidence. Again this controlled purchase and observation by law enforcement was during the second week of November.

During the month of November [Officer Garron] met with [CI] for the purpose of conducting a controlled purchase of cocaine from [Appellant.] [CI] was searched and found to be free of any controlled substances and/or United States currency at which time [Officer Garron] gave [CI] a quantity of United States currency with which to make the controlled purchase. [Officer Garron] had [CI] place a phone call to [Appellant] in order to set up the controlled buy; during this conversation, [Appellant] indicated that he would bring the controlled substance to [CI] at a predetermined location. At this time, [CI] left [Officer Garron] and went directly to the predetermined location making no stops in between and meeting with no other individuals. After approximately [20] minutes, involved members of law enforcement observed [Appellant] exit the front door of 909 West 7th Street . . . and proceed to enter a tan/beige Buick Park Avenue parked directly in front of the property[.] At this time involved members of law enforcement followed [Appellant] in the tan/beige Buick bearing Pennsylvania registration (JST-8648) directly to the predetermined meet location while observing that [Appellant] made no other stops in between; avoiding any meetings or transactions with any other individuals on his way to the predetermined meet location. Upon meeting with [CI, Officer Garron] observed a quick exchange/transaction between [CI] and [Appellant]. After the transaction, [Appellant] left the predetermined meet location while [CI] returned directly to [Officer Garron]. Involved members of law enforcement had

constant observation of [CI] prior to, during the deal and after the completion of the controlled buy. At no time did [CI] stop and[/]or exchange anything with any other person on the street while [e]n route to or from the predetermined meet location. Upon returning to [Officer Garron], [CI] turned over a quantity of cocaine consistent with the currency provided, while confirming that the subject [CI] purchased the illegal narcotics from was [Appellant] from within the tan/beige Buick bearing Pennsylvania registration (JST-8648). [CI] was again searched and found to free of any money and/or controlled substances. The cocaine purchased during the controlled buy was returned to Chester Police Headquarters where a field test was conducted and a positive reaction was received at which time the cocaine was placed into evidence. Again this controlled purchase and observation by law enforcement was during the second week of November.

During the month of December with 48 hours of application for search warrant, [Officer Garron] met with [CI] for the purpose of conducting a controlled purchase of cocaine from [Appellant] from within the residence located at 909 West 7th Street[.] CI] was searched and found to be free of any controlled substances and/or United States Currency. [Officer Garron] gave [CI] a quantity of United States currency with which to make the controlled purchase and had [CI] place a phone call to [Appellant]. After placing the phone call setting up the controlled buy [Officer Garron] and [CI] together went to the vicinity of 909 West 7th Street[.] [CI] left [Officer Garron] and went directly inside the rear door of [the property], by way of the carport/garage, making no stops in between and meeting with no other individuals. After approximately five minutes [CI] exited the rear door of 909 West 7th Street . . . and returned directly to [Officer Garron]. Involved members of law enforcement had constant observation of [CI] prior to entering the residence as well as after the completion of the controlled buy. At no time did [CI] stop and[/]or exchange anything with any person on the street while [e]n route to or from the residence located at 909 West 7th Street[.] Upon returning to [Officer Garron], [CI] turned over a quantity of cocaine consistent with the currency provided, while confirming that the subject [CI] purchased the illegal narcotics from was [Appellant] from within the residence located at 909 West 7th Street[.] [CI] was again searched and found to be free of money and/or any controlled substances. The cocaine purchased during the controlled buy was returned to Chester Police Headquarters where a field test was conducted and a positive reaction was received at

which time the cocaine was placed into evidence. Again this controlled purchase and observation by law enforcement was during the month of December within 48 hours of [the] application for [the] search warrant.

Based upon [Officer Garron]'s training and experience as well as the facts set forth above, [the officer] knows that persons distributing quantities of controlled substances, such as cocaine commonly engage in the same process at a residence that is within control of the trafficker and hence, the trafficker is secure in minimizing detection by police. Further, [Officer Garron] knows that it is common for traffickers like [Appellant] to store their supply or portions of their supply of cocaine, along with other controlled substances, records of sales, monies/assets and other related items at their residence since the residence proves some measure of security not only from police detection, but from rip-offs by other dealers and/or users of the controlled substance. Furthermore, [Officer Garron] knows based upon [his] experience that traffickers such as [Appellant] often have weapons within their control in order to protect themselves and their stash, including cocaine, from rip offs from other drug traffickers and from "stick up boys" - people who make a living by robbing drug traffickers.

Search Warrant at 2-6.

In finding there was probable cause to support the search warrant, the trial court relied on the following: (1) Officer Garron was a trained investigator for controlled substances and their uses, distribution, and effects on the human body, and was qualified as "Drug Expert" in court proceedings; (2) Officer Garron had been involved in numerous drug-related arrests as well as the execution of search and arrest warrants for controlled substances violations; (3) related to this case, he was in contact with the CI concerning sales of controlled substances by Appellant and indicated the CI told him the buys were made from Appellant; (4) the CI had provided law enforcement

with information concerning prior narcotics investigations and the information proved very reliable as it resulted in at least three arrest and the seizure of drugs and firearms; (5) Officer Garron corroborated the information regarding Appellant through an independent police investigation, verifying that Appellant had five prior convictions for PWID; and (6) Officer Garron conducted numerous periods of hidden surveillance of Appellant, noting that he drove a tan/beige Buick. *See* Trial Ct. Op. at 7-9. The court further stated:

> For all of these reasons, th[e c]ourt following the suppression hearing and review of the information contained in the search warrant affidavit and according deference to the issuing authority's probable cause determination in a common-sense, nontechnical manner concluded the affiant is a person of reasonable caution and the facts and circumstances within his knowledge were sufficient to warrant him to believe an offense had been committed and was continuing. Th[e c]ourt determined the issuing authority had a substantial basis for concluding probable cause existed within the four corners of the affidavit for the search warrant application and the issuing authority made the practical and common-sense decision given all the circumstances set forth in the affidavit supporting the search warrant application including the veracity and basis of knowledge of persons supplying hearsay information there was a fair probability contraband or evidence of a crime would be found in [Appellant]'s residence located at 909 West 7th Street . . . .

*Id.* at 10.[8]

_____

[8] The court also noted that was a misstatement that arose in the affidavit — Officer Garron alleged that in November 2014, Appellant drove a tan/beige Buick bearing Pennsylvania license plate, JST-8648. Trial Ct. Op. at 9. At the suppression hearing, Appellant called Yamin Ilyaas, an automobile tag agent, to testify that he issued a tag with the number "JST-8648" on December 1, 2014. *See* N.T., 8/11/15, at 6-9. Appellant argued this information was a material misstatement of fact.
*(Footnote Continued Next Page)*

Our review of the certified record leads us to agree with the trial court that the affidavit, as a whole, provided the magistrate district judge with sufficient information to conclude there was a reasonable probability evidence of criminal activity — drug use — would be found at Appellant's home and in his car. First, we note that Appellant's argument amounts to a request for this Court to take a "hypertechnical" approach regarding the language of the search warrant, including the affidavit of probable cause, based on a purported lack of specificity regarding the reliability of the CI. For example, as stated above, Appellant contends that while the CI provided information that led to three arrests, such information "does not establish reliability because there is no showing that the information . . . was proven to be true" and the "affidavit fails to include any other facts relating to the case or cases in which the

_____

In response, Officer Garron testified that he looked up for the tag for the vehicle after December 2, 2014, but before December 4, 2014, the date he drafted the search warrant. N.T., 8/11/15, at 29. He stated he "was attempting to . . . tidy up the search warrant, at which time [he] got the tag for the Buick so [he] could enter it into the search warrant." *Id.* at 28-29. Officer Garron testified that prior to that date, he had not taken notice of the actual license plate on Appellant's car. *Id.* at 29. The officer further stated that it was his experience that "sometimes drug traffickers keep their stash in a car if their house" is searched and they "take steps to avoid police detection by using cars that are not registered to them." *Id.* at 30. The trial court found Officer Garron to be "credible" and "accepted the explanation proffered by him concerning this impossibility and misstatement of fact." Trial Ct. Op. at 9-10.

Appellant did not renew this argument in his appellate brief; therefore, we need not address it further.

informant provided information[, including] the name of the persons arrested, the type of information provided by the informant or whether the case or cases got past the preliminary hearing[.]"  Appellant's Brief at 22.  Further, he suggests that affidavit did not contain enough particularity as to the statements made by the CI that were against their penal interest.  *Id.* at 23. He argues this is problematic because the actual statements did not appear in the affidavit, and there was no indication whether those statements were made with reference to this case.  *Id.*

We decline to adopt Appellant's "hypertechnical approach." We reiterate that the issuance of a search warrant is based on a "practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Jacoby*, 170 A.3d at 1082 (citation omitted).  Here, as the evidentiary support was summarized by the trial court, the issuing judge authorized the search warrant based on (1) substantial information from the CI, and (2) corroborating research conducted by Officer Garron, including three controlled buys that took place either in Appellant's home or his car.  It is evident from a "practical" and "common sense" reading of these facts there there was a fair probability that contraband or incriminating evidence would be found at those locations.  *See id.*; *see also Clark*, 28 A.3d at 1288.

- 18 -

We note that Appellant relies on **Commonwealth v. Manuel**, 194 A.3d 1076 (Pa. Super. 2018) (*en banc*), for the notion that the CI's reliability was not sufficiently established. We find that case is distinguishable from the present matter. In **Manuel**,

> the sole indicia of the CI's reliability presented in the affidavit of probable cause was that he had provided information leading to a single felony drug arrest. The affidavit [did] not identify the name of the defendant or docket number in that case, indicate the type of information provided by the CI that led to the arrest, or state whether the defendant was even held over for trial. Moreover, there [was] no indication that the CI himself participated in the criminal activity of which he informed the police, thus exposing himself to legal jeopardy and lending credence to his information. In short, the only evidence available to evaluate the reliability of [that] CI [was] the fact that he once provided police with some unspecified information that, either alone or in conjunction with other unidentified evidence, led to a finding of probable cause to arrest someone on felony drug charges.

**Manuel**, 194 A.3d at 1084 (citation omitted).

In reversing the trial court's denial of the co-defendants' motion to suppress, this Court recognized that there was "no 'magic number' of arrests or convictions for which a CI need previously have provided information to be deemed reliable[,]" and stated "the fact that the CI had previously provided information leading only to one unadjudicated arrest does not automatically render the affidavit lacking in probable cause." **Manuel**, 194 A.3d at 1084-85. Nevertheless, the Court found "the lack of any meaningful follow-up investigation by the police to secure true corroboration of such inside information [led them] to conclude that, under the totality of the

- 19 -

circumstances, the affidavit did not establish probable cause." *Id.* at 1085.
The Court further noted:

> Police neither arranged for the CI to conduct a controlled buy at the premises nor performed any type of photographic or electronic surveillance. Nor did they conduct a trash pull. Rather, [the officer] merely ran searches through PennDOT that established that [the one co-defendant] resided at the Pleasant Grove Residence and that [the other co-defendant] registered a car at that address. This generally available information was not corroborative of the CI's information.

*Id.*(footnote omitted). .

Turing to the present matter, we find that *Manuel* is distinguishable from the facts presented herein, and therefore, not controlling. Unlike the officers in *Manuel*, Officer Garron did follow up with meaningful investigation to secure a verified corroboration of the CI's information — he conducted surveillance as well as three controlled buys using the CI.

Lastly, Appellant argues that because he was arrested without probable cause, his confession should be purged because of the illegal arrest, and therefore, his statements to police should be suppressed. *See* Appellant's Brief at 25. We conclude that this claim is unavailing based on our above-stated analysis. Contrary to Appellant's argument, we agree with the trial court that there was probable cause to support the warrant.[9] Accordingly, Appellant's first claim has no merit.

---

[9] We note Appellant does not allege that his confession was involuntary or unknowing, which would call for a separate analysis.

- 20 -

In his remaining argument, Appellant alleges the trial court erred and abused its discretion by denying his pre-trial request for disclosure of the identity of the CI. *See* Appellant's Brief at 28-29. He argues that he "had every reason to place Officer Garron's credibility at issue with the jury" and the CI "would have been able to provide information that would have either contradicted or corroborated [the officer]'s trial testimony[.]" *Id.* at 34.[10] Appellant states that "much of the action undertaken, and not undertaken by the officer, was premised on information provided by" the CI. *Id.* at 34-35. He asserts, "As the information in the hands of the informant would bear directly on Officer Garron's trial testimony, it was relevant and not collateral. The identity of the informant was therefore material to the defense." *Id.* at 35. Appellant also complains that "the Commonwealth did not present any evidence that disclosure of the identity of the [CI] would jeopardize the informant's safety." *Id.*

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of

---

[10] For example, he states that the officer never retained the photograph of Appellant he showed to the CI. *See* Appellant's Brief at 32. The CI described the person selling drugs "as a black male, 5'5" to 5'7", approximate age around 40 [years old]." *Id.* (citation omitted). Appellant points out that there was a second black male found in the basement of the house, who was "described as 53 years old, medium build, dark complexion." *Id.* Appellant suggests no further investigation was done by Officer Garron to see if this individual was the person the CI had identified. *Id.* at 33.

- 21 -

discretion." ***Commonwealth v. Jordan***, 125 A.3d 55, 62 (Pa. Super. 2015) (*en banc*) (citation omitted).

> Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:
>
> > (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
> >
> > > (i) the names and addresses of eyewitnesses[.]
>
> Pa.R.Crim.P. 573(B)(2)(a)(i).

***Commonwealth v. Marsh***, 997 A.2d 318, 321 (Pa. 2010).

> The Commonwealth has a qualified privilege not to disclose the identity of a CI. Thus, where a defendant seeks a CI's identity, the defendant must first show that [the] request for disclosure is reasonable and that the information sought to be obtained through disclosure is material to the defense. Thus, although the defendant need not predict absolutely what the CI would say, the defendant must demonstrate at least a reasonable possibility the informant's testimony would exonerate him.
>
> It is only after the defendant carries this initial burden does the trial court then exercise its discretion and determine whether the information is to be revealed. A defendant fails to carry the initial burden to show that the CI's identity would be material to a defense of mistaken identity where the record contains no evidentiary basis on which the defendant could assert the defense.

***Commonwealth v. Bright***, 234 A.3d 744, 747 (Pa. Super. 2020) (citations & quotation marks omitted).

In addressing this issue, the trial court found the following:

Th[e c]ourt on June 3, 2016[,] properly denied Appellant's motion filed as part of his March 16, 2016[,] Amended Omnibus Pretrial Motion. In the motion, Appellant claimed he is entitled to have the confidential informant's identity revealed. Appellant contended a significant portion of the affidavit used to support the search warrant involved alleged controlled buys by the confidential informant, the controlled buys were not witnessed by any law enforcement officer and the identity of the confidential informant is essential in order to establish the veracity of the information used to support the affidavit of probable cause.

Accordingly on April 12, 2016[, the trial c]ourt held a hearing on Appellant's motion for disclosure for Appellant to present evidence on the issue of whether a misrepresentation was knowingly and falsely made in the probable cause affidavit and whether it was material to the establishment of probable cause. At the hearing on the motion, no testimony was presented; Appellant reiterated the allegations set forth in his motion. Th[e c]ourt was not persuaded Appellant demonstrated through his motion, exhibits, and argument any right to disclosure of the identity of the confidential informant, and concluded Appellant failed to meet his burden to show the existence of willful and material misstatements or falseness in the search warrant affidavit.[3] Additionally, th[e c]ourt found, based on the totality of the circumstances set forth in the affidavit, the confidential informant was reliable. Th[e c]ourt also concluded, based on the information set forth in the affidavit, the safety of the informant would have been compromised by disclosure of the informant's identity.

_____

[3] The only potential misstatement in the affidavit of probable cause for the search warrant raised by Appellant concerned the number of the license plate for the Buick and [the trial] court was satisfied by Officer Garron's explanation and concluded this was not a material misstatement of fact.

_____

In view of all this, recognizing the Commonwealth enjoys a privilege to withhold the identity of the confidential informant, and having determined Appellant did not show any material

misstatements of fact, or disclosure of the informant's identity was material to the preparation of his defense or was reasonable in the interests of justice, th[e c]ourt was not required to conduct a balancing test concerning disclosure of the identity of the confidential informant and properly denied Appellant's motion.

Assum[ing] *arguendo* th[e] court was required to conduct the balancing test, upon consideration of all the facts and circumstances of record in this case, the scales do not tip in favor of disclosure of the identity of the confidential informant. Th[e c]ourt's denial of Appellant's motion was proper, and the decision was not an error nor manifestly unreasonable.

Trial Ct. Op. at 14-16.

We discern no abuse of discretion in the trial court's analysis or conclusion. Appellant failed to meet his burden of establishing that there was a knowing and false misrepresentation in the affidavit of probable cause, and it was material to establishment of that standard of proof. Moreover, to extent Appellant attempts to argue that Officer Garron's testimony could have been attacked by the information provided by the CI, we point out that the Commonwealth's case was predicated upon the narcotics and paraphernalia seized from Appellant's property, which Appellant admitted to possessing in his statement to police. Therefore, Appellant "failed to satisfy the threshold test necessary to overcome the Commonwealth's qualified privilege." ***See id.*** at 143. Accordingly, we conclude the trial court did not abuse its discretion in denying Appellant's request to disclose the CI's identity, and his second claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2023